■ In the Matter of NEW YORK CITY ASBESTOS LITIGATION. DONNA VAN NOCKER, as Personal Representative of the Estate of PETER M. DEMMERLE, Deceased, Appellant, v A.W. CHESTERTON Co. et al., Defendants, and HARDIE-TYNES Co., INC., Respondent. [789 NYS2d 484]—

Order, Supreme Court, New York County (Helen Freedman, J.), entered on or about November 6, 2003, granting defendant-respondent's motion for summary judgment dismissing the complaint as against it, unanimously affirmed, without costs.

During his military service between 1957 and 1972, plaintiff's decedent allegedly was exposed to asbestos in products manufactured by (among others) Hardie-Tynes Manufacturing Company (Old H-T), a Delaware corporation with its principal place of business in Alabama.[1] On December 31, 1997, Old H-T sold substantially all of its operating assets, for $1 million cash, to defendant-respondent Hardie-Tynes Co., Inc. (New H-T), an Alabama corporation with its principal place of business in that state.[2] In this action (commenced in 2002), which seeks damages for the decedent's allegedly asbestos-related injuries, New H-T is sued as the alleged successor to Old H-T's tort liabilities. New H-T denies that any such successor liability can be imposed on it.

After responding to plaintiff's interrogatories and document requests on the successor liability issue, New H-T moved for summary judgment dismissing the complaint as against it on the ground that such interrogatory responses and documentary evidence establish, as a matter of law, that it cannot be held liable as a successor to Old H-T's tort liabilities. In opposition, plaintiff argued that, at a minimum, a triable issue exists as to whether New H-T's purchase of Old H-T's assets constituted a de facto merger, so as to cause New H-T to succeed to Old H-T's tort liabilities. The trial court granted New H-T summary judgment, and plaintiff has appealed. For the following reasons, we affirm.

"It is the general rule that a corporation which acquires the assets of another is not liable for the torts of its predecessor" (*Schumacher v Richards Shear Co.*, 59 NY2d 239, 244 [1983] [citations omitted]). There is an exception to this rule, however, for cases in which there has been "a consolidation or merger of

---

**1.** Although Old H-T was incorporated in 1979, the business dates back to the 1890s, and it is undisputed that Old H-T succeeded to any tort liability arising from the conduct of the business prior to Old H-T's incorporation.

**2.** New H-T was incorporated in December 1997 as "HT Acquisition, Inc.," and changed its name to "Hardie-Tynes Co., Inc." on or about January 22, 1998. We refer to this entity as "New H-T" both before and after its name change.

seller and purchaser" (*id.* at 245).[3] A transaction structured as a purchase-of-assets may be deemed to fall within this exception as a "de facto" merger, even if the parties chose not to effect a formal merger, if the following factors are present: (1) continuity of ownership; (2) cessation of ordinary business operations and the dissolution of the selling corporation as soon as possible after the transaction; (3) the buyer's assumption of the liabilities ordinarily necessary for the uninterrupted continuation of the seller's business; and (4) continuity of management, personnel, physical location, assets and general business operation (*see Fitzgerald v Fahnestock & Co.*, 286 AD2d 573, 574 [2001], citing *Sweatland v Park Corp.*, 181 AD2d 243, 245-246 [1992]). Although a de facto merger finding does not necessarily require the presence of each of these factors (*see Fitzgerald*, 286 AD2d at 574), the record in this case reveals that the first and second criteria are not satisfied by the Old H-T/New H-T transaction. In our view, possible satisfaction of only the third and fourth criteria does not suffice to create a triable de facto merger issue.

The first criterion, continuity of ownership, exists where the shareholders of the predecessor corporation become direct or indirect shareholders of the successor corporation as the result of the successor's purchase of the predecessor's assets, as occurs in a stock-for-assets transaction. Stated otherwise, continuity of ownership describes a situation where the parties to the transaction "become owners together of what formerly belonged to each" (*Cargo Partner AG v Albatrans, Inc.*, 352 F3d 41, 47 [2d Cir 2003] [applying New York law]). It has been held that, because continuity of ownership is "the essence of a merger," it is a necessary element of any de facto merger finding, although not sufficient to warrant such a finding by itself (*id.* at 46-47). Here, there is no continuity of ownership between Old H-T and New H-T, since New H-T paid for Old H-T's assets with cash, not with its own stock, and neither Old H-T nor any of its shareholders has become a shareholder of New H-T. The record reveals that, at the time of the subject transaction, Old H-T had only ten shareholders (six individuals, three trusts and an estate), who are now members of the limited liability company (named "Hardie-Tynes, L.L.C.") to which Old H-T was converted (as permitted by the asset purchase agreement) after the transaction. Meanwhile, since its inception, New H-T has had

---

**3.** Plaintiff does not invoke any of the other three exceptions to the general rule that a purchase-of-assets does not give rise to successor liability. These exceptions are (1) the purchaser's express or implied assumption of the seller's tort liabilities, (2) the purchaser's being the "mere continuation" of the seller, and (3) fraud (*see Schumacher*, 59 NY2d at 245).

only three shareholders, each of whom is an individual, and none of whom is a former shareholder or current member of Old H-T. To the extent a similarity in last names suggests the possibility that one Old H-T shareholder/member may have a familial relationship with one or more of the three New H-T shareholders, we reject plaintiff's contention that this raises an issue as to continuity of ownership.

The second de facto merger criterion also is not satisfied here. Notwithstanding that Old H-T evidently has ceased ordinary business operations, this entity has never been dissolved, and has remained in existence in a meaningful way since the subject transaction closed. The asset purchase agreement specifically provided that Old H-T would retain its "minute books, stock ledger records and related corporate records," and required it, for a period of two years after the closing, to "maintain its corporate existence," subject to its right to convert to the form of a limited liability company. As previously noted, Old H-T exercised its right under the agreement to convert itself to a limited liability company after the closing, and Old H-T continued to exist in this form as of the time the summary judgment motion was submitted to the Supreme Court.

We acknowledge that the dissolution criterion for a de facto merger may be satisfied, notwithstanding the selling corporation's continued formal existence, if that entity "is shorn of its assets and has become, in essence, a shell" (*Fitzgerald,* 286 AD2d at 575). Here, this has not happened. Although most of the business's operating assets were transferred to New H-T on December 31, 1997, the asset purchase agreement provided that Old H-T would retain substantial assets, and would continue to have substantial contractual obligations, thereafter. Among the "Excluded Assets" the asset purchase agreement specified would remain under Old H-T's ownership after the closing were: (1) "all cash on hand and in all bank accounts and cash equivalents"; (2) subject to certain exceptions, "trade accounts receivable, employee receivables, and other current receivables"; (3) certain "claims and choses in action relating to the Business"; (4) "income taxes of the Business recoverable as of the Closing Date"; (5) certain raw materials and supplies; (6) automobiles, whether owned or leased; (7) certain real property; and (8) certain purchase orders, unfilled customer orders, and agreements relating to the business. The asset purchase agreement also provided that, after the closing, Old H-T would have the following obligations, among others: (1) to reimburse New H-T for the costs of performing warranty work with respect to products sold prior to the closing; (2) to complete, at Old H-T's

expense, certain environmental remediation projects; (3) to indemnify New H-T against claims of third parties arising from the conduct of the business prior to the closing; and (4) to bear half the cost of product liability insurance coverage for claims arising from the preclosing operation of the business for a period of five years after the closing.

In view of the substantial assets that Old H-T retained after selling most of its operating assets to New H-T, and in view of the considerable obligations that the asset purchase agreement imposed on Old H-T for a substantial period of time after the closing, it cannot be said that the subject transaction left Old H-T a mere "shell" whose legal existence may be disregarded for purposes of the de facto merger analysis. Indeed, prior decisions have found that no de facto merger occurred in cases where the asset-purchase transaction left the selling corporation with no more substantial postclosing existence than Old H-T has had in this case (*see Subramani v Bruno Mach. Corp.*, 289 AD2d 167, 167 [2001] [no de facto merger although selling corporation (Old Sheridan) "dissolved shortly after the closing, distributing the sales proceeds to its shareholders"]; *Ladjevardian v Laidlaw-Coggeshall, Inc.*, 431 F Supp 834, 839, 838 [SD NY 1977] [no de facto merger, where selling corporation "continued to exist after the sale and continues to be entitled to the installment payments for the assets," although plaintiffs alleged that it was only an "inactive shell"]).[4]

In sum, the record establishes, as a matter of law, that the first two of the four de facto merger factors are absent in this case. In this regard, we again note that the first factor (continuity of ownership) has recently been held to be essential to a de facto merger finding (*see Cargo Partner*, 352 F3d at 46-47). We also observe that the meaningful postclosing existence of Old H-T establishes both that the second de facto merger factor (dissolution of the selling corporation) is absent, and that this case does not implicate the underlying rationale for imposing liability on a successor by merger, namely, " 'to ensure that a source remains to pay for the victim's injuries' " (*City of New York v Charles Pfizer & Co.*, 260 AD2d 174, 176 [1999], quoting *Grant-Howard Assoc. v General Housewares Corp.*, 63 NY2d

---

4. We note that Old H-T's lack of insurance coverage for asbestos-related claims arising prior to the closing appears to be the result, not of the subject transaction, but of the insolvency of the carrier that provided Old H-T with liability coverage during the period in which the decedent's asbestos exposure allegedly occurred. Although, as contemplated by the asset purchase agreement, Old H-T did obtain coverage for preclosing claims first asserted after the closing, we are advised that such policy contains "an absolute exclusion for asbestos-related claims."

291, 297 [1984]). Under these circumstances, we conclude that the record establishes, as a matter of law, that the subject transaction was not a de facto merger. We would add that plaintiff does not allege that Old H-T sold its assets for inadequate consideration, or that the transaction was somehow fraudulent as to those having claims against Old H-T.

Given the clear absence of the first two de facto merger factors, it does not avail plaintiff that the third factor (assumption of liabilities necessary for uninterrupted business operations) apparently is present, or that she may have raised an issue as to the presence of the fourth factor (continuity of management, personnel, physical location, assets and general business operation). A holding that the last two factors alone could establish a de facto merger would considerably enlarge the proportion of asset-sales qualifying for de facto merger treatment, and would essentially adopt the continuity-of-enterprise theory of successor liability and/or the product-line theory of successor liability, something the Court of Appeals specifically declined to do in *Schumacher* (59 NY2d at 245-246). Concur—Tom, J.P., Andrias, Friedman and Sullivan, JJ.