[851 NE2d 1170, 818 NYS2d 819]

Bridget Semenetz, Individually and as Parent and Guardian of Sean Semenetz, an Infant, Appellant, v Sherling & Walden, Inc., et al., Defendants, and Sawmills & Edgers, Inc., Respondent.

Argued May 4, 2006; decided June 13, 2006

**POINTS OF COUNSEL**

*Powers & Santola, LLP,* Albany (*Michael J. Hutter* of counsel), for appellant. I. Plaintiff can properly establish that Sawmills & Edgers, Inc. is subject to personal jurisdiction on the basis that the personal jurisdiction over S & W Edger Works, Inc. can be imputed to Sawmills upon a finding that Sawmills is substantively responsible for Edger Works' tortious conduct. (*Longines-Wittnauer Watch Co. v Barnes & Reinecke,* 15 NY2d 443; *Kreutter v McFadden Oil Corp.,* 71 NY2d 460; *Arrowsmith v United Press Intl.,* 320 F2d 219; *In re DES Cases,* 789 F Supp 552; *Anderson Dev. Corp. v Isoreg Corp.,* 154 AD2d 859; *Tonns v Spiegel's,* 90 AD2d 548; *Andrew Greenberg, Inc. v Sir-Tech Software, Inc.,* 4 NY3d 185; *Applied Hydro-Pneumatics v Bauer Mfg.,* 68 AD2d 42; *Schenin v Micro Copper Corp.,* 272 F Supp 523; *Purdue Research Found. v Sanofi-Synthelabo, S.A.,* 338 F3d 773.) II. The product line exception should be adopted as an exception to the general rule of no corporate successor liability upon a transfer of assets. (*Schumacher v Richards Shear Co.,* 59 NY2d 239; *Salvati v Blaw-Knox Food & Chem. Equip.,* 130 Misc 2d 626; *Radziul v Hooper, Inc.,* 125 Misc 2d 362; *Hart v Bruno Mach. Corp.,* 250 AD2d 58; *Rothstein v Tennessee Gas Pipeline Co.,* 174 Misc 2d 437, 259 AD2d 54; *Grant-Howard Assoc. v General Housewares Corp.,* 115 Misc 2d 704, 97 AD2d 390, 63 NY2d 291; *Delgado v Matrix-Churchill Co.,* 205 AD2d 575; *Thomas Crimmins Contr. Co. v City of New York,* 138 AD2d 138, 74 NY2d 166; *City of New York v Pfizer & Co.,* 260 AD2d 174; *Travis v Harris Corp.,* 565 F2d 443.) III. The essential elements necessary to support application of the product line exception have been established by plaintiff as a matter of law, or at

the very least by a prima facie showing. (*Hart v Bruno Mach. Corp.,* 250 AD2d 58.)

*Goldberg Segalla, LLP,* Albany (*Jonathan M. Bernstein* of counsel), for respondent. I. Contrary to plaintiff's arguments, the Appellate Division's decision and order should be affirmed as no basis exists to establish personal jurisdiction in New York over Sawmills & Edgers, Inc. (*Johnston v Pneumo Corp.,* 652 F Supp 1402; *Calder v Jones,* 465 US 783; *Keeton v Hustler Magazine, Inc.,* 465 US 770; *Rush v Savchuk,* 444 US 320; *Central States, Southeast & Southwest Areas Pension Fund v Reimer Express World Corp.,* 230 F3d 934, 532 US 943; *Witt v Scully,* 539 F2d 950; *Sher v Johnson,* 911 F2d 1357; *Longines-Wittnauer Watch Co. v Barnes & Reinecke,* 15 NY2d 443; *LaMarca v Pak-Mor Mfg. Co.,* 95 NY2d 210; *American Tel. & Tel. Co. v Compagnie Bruxelles Lambert,* 94 F3d 586.) II. Exercise of personal jurisdiction over Sawmills & Edgers, Inc. in New York fails to comport with due process. (*Burger King Corp. v Rudzewicz,* 471 US 462; *International Shoe Co. v Washington,* 326 US 310; *Asahi Metal Industry Co. v Superior Court of Cal., Solano Cty.,* 480 US 102; *World-Wide Volkswagen Corp. v Woodson,* 444 US 286; *Metropolitan Life Ins. Co. v Robertson-Ceco Corp.,* 84 F3d 560; *Sedig v Okemo Mtn.,* 204 AD2d 709; *Miller v Surf Props.,* 4 NY2d 475.)

### OPINION OF THE COURT

READ, J.

A corporation that purchases another corporation's assets is not liable for the seller's torts, subject to four exceptions outlined in *Schumacher v Richards Shear Co.* (59 NY2d 239 [1983]). Plaintiff Bridget Semenetz asks us to revisit *Schumacher* to endorse a fifth exception—the "product line" exception in cases of strict products liability. For the reasons that follow, we reject the "product line" exception.

### I.

In May 1998, defendant S & W Edger Works, Inc., an Alabama corporation, sold a 10,000-pound band sawmill[1] to Semenetz Lumber Mill, Inc., located in Jeffersonville, New York. The

---

**1.** A sawmill is a machine for cutting logs into rough-squared sections or into planks and boards as they move past the saw on a feeder table (*see* "sawmill," Encyclopædia Britannica Online, <http://www.britannica.com/eb/article-9065969>). The cutting tool of a band sawmill is an endless flexible steel band with teeth on one edge; the band is carried on two large-diameter

sawmill, which cost $45,000, was capable of sawing logs 36 inches in diameter and 20 feet long. On July 26, 1999, Sean Semenetz, an infant, caught his right hand and fingers between a sprocket and chain apparatus in the sawmill, causing partial amputation of several fingers.

On October 5, 2000, Edger Works sold most of its assets, including real property, goodwill, trade names and inventory, to Sawmills & Edgers, Inc., another Alabama corporation, for $300,000. The purchase contract documents expressly stated that "[t]he Buyer [Sawmills] assume[d] none of the Seller's [Edger Works] liabilities except for the receipt of and payment of ordered but undelivered inventory," as listed in an attachment. On October 6, 2000, Edger Works changed its name to Sherling & Walden, Inc. Sherling & Walden paid Edger Works' outstanding corporate debts in the months after the closing.

Sawmills manufactured sawmills at the same plant in Alabama where Edger Works had formerly produced them, and retained at least some of Edger Works' former employees. Its advertising described Sawmills as "formerly S & W Edger Works," stating that it "opened [its] doors for business in 1990," which is the date Edger Works first sold its products in the marketplace. Sawmills has made only two sales in New York, both to Semenetz Lumber at its request and for less than $100.

On April 15, 2002, plaintiff commenced this action for damages on behalf of her infant son, naming Sawmills, Edger Works and Sherling & Walden as codefendants in causes of action alleging strict products liability; negligent design and manufacture; breach of duty to warn; and breach of warranty. She also asserted a cause of action against Semenetz Lumber for failure to maintain safe premises.

In its answer, Sawmills pleaded lack of personal jurisdiction as an affirmative defense; Sawmills subsequently moved for summary judgment dismissing the complaint and all cross claims on this ground. Before deciding the motion, Supreme Court ordered further discovery on the issue of personal jurisdiction, noting that there was, in fact, long-arm jurisdiction over Edger Works, which had sold and shipped the sawmill to Semenetz Lumber in 1998.

Supreme Court denied Sawmills' motion for summary judgment. The court first turned to our decision in *Schumacher* to

---

rotating wheels mounted on parallel axes some distance apart (*see* "sawing machine," Encyclopædia Britannica Online, <http://www.britannica.com/eb/article-9001239>).

support the proposition that "while, in general, a corporation which acquires the assets of another is not liable for the torts of the predecessor corporation, there [are] exceptions to the rule." These exceptions arise where a successor corporation "expressly or impliedly assume[s] [its] predecessor's tort liability"; or "there [is] a consolidation or merger of seller and purchaser"; or "the purchasing corporation [is] a mere continuation of the selling corporation"; or "the transaction is entered into fraudulently to escape such obligations" (*Schumacher*, 59 NY2d at 245). The court determined that Sawmills did not fit within any of the four *Schumacher* exceptions, but that this did not end its inquiry in light of the Appellate Division's decision in *Hart v Bruno Mach. Corp.* (250 AD2d 58 [3d Dept 1998]).

Supreme Court read *Hart* as expanding *Schumacher* to encompass two additional exceptions in cases alleging strict products liability—the "product line" exception, which the Appellate Division expressly espoused in *Hart*, and the "continuing enterprise" exception, which Supreme Court concluded that the Appellate Division had impliedly adopted in *Hart*. The court held that "under both . . . exceptions, [Sawmills] is a successor to [Edger Works] and is subject to [ ] long-arm jurisdiction here." Sawmills appealed.

The Appellate Division first determined that "there can be no jurisdiction here based on the 'corporate presence doctrine' or New York's long-arm statute" (21 AD3d 1138, 1139 [3d Dept 2005] [citations omitted]). The "corporate presence" doctrine was not satisfied because Sawmills was a nondomiciliary corporation and was not doing business in New York. New York's long-arm statute did not reach Sawmills because it came into existence after the infant's accident, and therefore did not engage in any tortious conduct causing his injuries. Similarly, assuming Sawmills had a duty to warn, the duty did not arise until after Sawmills acquired Edger Works' assets, which took place after the infant's accident. Nor was there any evidence that Sawmills derived substantial revenue from interstate commerce.

Next, the Appellate Division acknowledged that *Hart* had adopted the "product line" exception, which the First Department later rejected in *City of New York v Pfizer & Co.* (260 AD2d 174 [1st Dept 1999]), and which we had "not yet embraced" (21 AD3d at 1140). The Court did not determine whether Sawmills fit within the "product line" exception, however, because

"[t]he 'product line' and 'continuing enterprise' exceptions to the successor liability rule deal with the concept of tort liability, not jurisdiction. When and if either exception is found applicable, the corporate successor would be subject to liability for the torts of its predecessor in any forum having in personam jurisdiction over the successor, but the exceptions do not and cannot confer such jurisdiction over the successor in the first instance. While we recognize that in certain circumstances a successor corporation may inherit its predecessor's jurisdictional status, the facts of the subject case do not fit within such a scenario" (*id.* at 1140-1141 [internal quotation marks and citations omitted]).

Accordingly, the Appellate Division reversed so much of Supreme Court's order as denied Sawmills' motion for summary judgment, granted the motion and dismissed the complaint against Sawmills. We granted plaintiff permission to appeal[2] and now affirm, but on a different ground altogether.

## II.

The "product line" exception to the general rule against successor liability originated with the California Supreme Court's decision in *Ray v Alad Corp.* (19 Cal 3d 22, 560 P2d 3 [1977]). In *Ray*, the court imposed liability on the successor corporation for an injury sustained by a plaintiff who fell off a ladder manufactured by its predecessor. The court concluded that successor liability was proper because "a party which acquires a manufacturing business and continues the output of its line of products under the circumstances here presented assumes strict tort liability for defects in units of the same product line previously manufactured and distributed by the entity from which the business was acquired" (19 Cal 3d at 34, 560 P2d at 11).

The court articulated three rationales for the "product line" exception:

"(1) the virtual destruction of the plaintiff's remedies against the original manufacturer caused by the successor's acquisition of the business, (2) the

---

**2.** On this appeal, plaintiff no longer relies upon the "continuing enterprise" exception. Because we do not adopt the "product line" exception, we need not and do not address plaintiff's argument that personal jurisdiction may properly be imputed to a successor corporation whenever it is substantively responsible for its predecessor's allegedly tortious conduct.

successor's ability to assume the original manufacturer's risk-spreading role, and (3) the fairness of requiring the successor to assume a responsibility for [its predecessor's] defective products that was a burden necessarily attached to the original manufacturer's good will being enjoyed by the successor in the continued operation of the business" (19 Cal 3d at 31, 560 P2d at 9).

As for the *Ray* court's first rationale—the virtual destruction of the products liability plaintiff's remedies against the original manufacturer—this "is not a justification for suing the successor, but rather . . . merely a statement of the problem. . . . More than just a statement of the problem is required to justify a change in the corporate law" (*Fish v Amsted Indus., Inc.*, 126 Wis 2d 293, 305-306, 376 NW2d 820, 826 [1985] [rejecting "product line" exception]).

As the Wisconsin Supreme Court has pointed out, the successor may lack capacity to spread the risk of injuries because

"[s]mall manufacturers have a difficult problem obtaining products liability insurance and find it impossible to cover the risks by raising prices because they have to compete with large manufacturers who can keep the price down. . . . [I]t is one thing to assume that a manufacturer can acquire insurance against potential liability for its own products and another to assume it can acquire such insurance for the products made by a different manufacturer" (*Fish*, 126 Wis 2d at 308, 376 NW2d at 827 [internal quotation marks and citations omitted]).

As for whether liability should be imposed upon the successor corporation because it enjoys the benefit of its predecessor's goodwill,

"any benefit the successor acquired through the goodwill or reputation of the predecessor's product line was considered and negotiated for at the time of the sale and constituted part of the sale price. To hold the successor liable for defects in products manufactured by the predecessor would be forcing the successor to pay twice for . . . goodwill" (*Fish*, 126 Wis 2d at 309, 376 NW2d at 828).

Importantly, the "product line" exception threatens "economic annihilation" for small businesses (*Bernard v Kee Mfg. Co.*,

*Inc.*, 409 So 2d 1047, 1049 [Fla 1982] [rejecting "product line" exception]). Because small businesses have limited assets, they face potential financial destruction if saddled with liability for their predecessors' torts. This threat would deter the purchase of ongoing businesses that manufacture products and, instead, force potential sellers to liquidate their companies. As the Florida Supreme Court has observed, 90% of the nation's manufacturing enterprises are small businesses, and "[i]f small manufacturing corporations liquidate rather than transfer ownership, the chances that the corporations will be replaced by other successful small corporations are decreased" (409 So 2d at 1050, citing Note, *Products Liability and Successor Corporations: Protecting the Product User and the Small Manufacturer Through Increased Availability of Products Liability Insurance*, 13 UC Davis L Rev 1000, 1002-1003 [1980]).

Further, extending liability to the corporate successor places responsibility for a defective product on a party that did not put the product into the stream of commerce. This is inconsistent with the basic justification for strict products liability,

> "which is to place responsibility for a defective product on the manufacturer who placed that product into commerce. The corporate successor has not created the risk, and only remotely benefits from the product. The successor has not invited usage of the product or implied its safety. Since the successor was never in a position to eliminate the risk, a major purpose of strict liability in modifying a manufacturer's behavior is also lost" (*Bernard*, 409 So 2d at 1050 [citations omitted]).

In short, adoption of the "product line" exception would mark "a radical change from existing law implicating complex economic considerations better left to be addressed by the Legislature" (*City of New York*, 260 AD2d at 176, citing Restatement [Third] of Torts: Products Liability § 12, Comment *b*, and Reporters' Note thereto).

We therefore join the majority of courts declining to adopt the "product line" exception (*see generally* 1 American Law of Products Liability 3d § 7:27 [collecting cases]; *see also* 15 Fletcher, Cyclopedia of the Law of Private Corporations § 7123.30 [perm ed]). Sawmills does not fit within any of the four *Schumacher* exceptions, and therefore cannot be liable for Edger Works' allegedly tortious conduct.

Accordingly, the order of the Appellate Division should be affirmed, with costs.

Chief Judge KAYE and Judges G.B. SMITH, CIPARICK, ROSEN-BLATT, GRAFFEO and R.S. SMITH concur.

Order affirmed, with costs.