OPINION OF THE COURT
Jack M. Battaglia, J.
Plaintiff Roberto Morales alleges that, on October 16, 2004, employed as a detective/emergency service officer by the New York City Police Department, he was “caused to become injured when, while changing the C02 cartridge in [a] tranquilizer gun/ air pistol, said product misfired and caused him to be injured.” (Verified complaint 1Í13.) He further alleges that the product was introduced into commerce by defendants Palmer Cap-Chur Equipment, Inc. and the Aristole Corporation, doing business as Nasco, sued herein as Nasco. Defendant Cap-Chur now moves for summary judgment of dismissal.
There is no dispute that the product that allegedly injured plaintiff, called variously a “tranquilizer gun,” “tranquilizer projector,” “animal control air pistol,” and “short range projector,” was manufactured by a nonparty, Palmer Chemical & Equipment Co., Inc., and sold by Palmer Chemical in July 1976 to Nasco, which sold it to plaintiffs employer. There is also no dispute that, pursuant to an asset purchase agreement dated July 28, 1997, Cap-Chur purchased certain of Palmer Chemical’s assets relating to the seller’s business, described as the “production, manufacture, assemblage, sale and distribution of a tranquilizer projector and any and all applicable and ancillary equipment used with the tranquilizer projector, including, but not limited to, syringes and chemicals.” (See asset purchase agreement, exhibit 2 to affidavit of Thomas B. Taylor II, recital C.)
Based primarily upon the affidavit of Thomas B. Taylor II, president and part owner of Cap-Chur since the corporation’s formation in February 1997, Cap-Chur contends that it is entitled to judgment as a matter of law because it cannot be liable in tort for injury allegedly caused by a defective product manufactured and sold by Palmer Chemical. Plaintiff and defendant Nasco oppose, arguing that triable issues preclude summary judgment, or that at least further disclosure is warranted. Defendants City of New York and New York City Police Department have taken no position on the motion.
*688 “It is the general rule that a corporation which acquires the assets of another is not liable for the torts of its predecessor.” (Schumacher v Richards Shear Co., 59 NY2d 239, 243 [1983].)
“A corporation may be held liable for the torts of its predecessor if (1) it expressly or impliedly assumed the predecessor’s tort liability, (2) there was a consolidation or merger of seller and purchaser, (3) the purchasing corporation was a mere continuation of the selling corporation, or (4) the transaction is entered into fraudulently to escape such obligations.” (Id. at 245; see also Semenetz v Sherling & Walden, Inc., 7 NY3d 194, 197-198 [2006].)
The policies that guide an assessment of successor liability include “the concept that a successor that effectively takes over a company in its entirety should carry the predecessor’s liabilities as a concomitant to the benefits it derives from the good will purchased” (see Grant-Howard Assoc. v General Housewares Corp., 63 NY2d 291, 296 [1984]), and “the desire to ensure that a source remains to pay for the victim’s injuries” (id. at 297; see also Matter of New York City Asbestos Litig., 15 AD3d 254, 258-259 [1st Dept 2005]).
In order to succeed on this motion, Cap-Chur must sufficiently address “all potential bases for the imposition of liability against it as a successor to the manufacturer.” (See Meadows v Amsted Indus., 305 AD2d 1053, 1055 [4th Dept 2003].) “As a general rule, a party cannot establish its entitlement to summary judgment merely by pointing to gaps in the opponent’s proof.” (Falah v Stop & Shop Cos., Inc., 41 AD3d 638, 639 [2d Dept 2007].) Rather, the party “must affirmatively demonstrate the merit of its claim or defense.” (See Pappalardo v Long Is. R.R. Co., 36 AD3d 878, 879 [2d Dept 2007] [internal quotation marks and citations omitted].) The rule applies even where the defendant contends that the plaintiff cannot establish an essential element of its cause of action, such as causation. (See Restrepo v Rockland Corp., 38 AD3d 742, 743 [2d Dept 2007]; Pappalardo v Long Is. R.R. Co., 36 AD3d at 880.)
Cap-Chur’s showing on its motion is based almost entirely upon the affidavit of Thomas B. Taylor II and a copy of the July 28, 1997 asset purchase agreement between Palmer Chemical and Cap-Chur, together with documents related to the consummation of the transaction and payment of the purchase price. Mr. Taylor had been employed by Palmer Chemical for approximately 10 years before Cap-Chur’s acquisition of Palmer *689 Chemical’s assets. For the most part, the assertions in Mr. Taylor’s affidavit and the documents attached are supported by his personal knowledge; where that is not so, it will be noted. Absent from Cap-Chur’s showing is any affidavit or other evidence from Harold C. “Red” Palmer, the principal in Palmer Chemical, who gave his name to both that company and CapChur.
Cap-Chur establishes prima facie that it did not expressly or impliedly assume Palmer Chemical’s tort liability. The asset purchase agreement is explicit and clear: “Purchaser shall not assume and shall not discharge or perform any liabilities and obligations of Seller other than the payment of royalties after described in Article XI hereof.” (Asset purchase agreement, art II, § 2.) Courts have given effect to such explicit disclaimers in declining to impose successor liability. (See Kretzmer v Firesafe Prods. Corp., 24 AD3d 158, 158 [1st Dept 2005]; Goldman v Packaging Indus., 144 AD2d 533, 535 [2d Dept 1988]; Buja v KCI Konecranes Intl. plc, 12 Misc 3d 859, 865 [Sup Ct, Monroe County 2006]; see also Wensing v Paris Indus.-N.Y., 158 AD2d 164, 166-167 [3d Dept 1990]; Heights v U.S. Elec. Tool Co., 138 AD2d 369, 370 [2d Dept 1988].)
Plaintiff and Nasco in opposition have failed to raise a triable issue. They point to no fact that would suggest an agreement by Cap-Chur to assume the tort liabilities of Palmer Chemical, and argue only from the Court of Appeals determination in Grant-Howard Assoc. v General Housewares Corp. (63 NY2d 291 [1984]), which is clearly inapposite. In that case, the Court interpreted an express “assumption of existing liabilities” as not covering a tort claim that did not accrue until later. (See id. at 297.) Here, the only express assumption by Cap-Chur of any liability or obligation of Palmer Chemical is the payment of royalties. Rather than assist plaintiff and Nasco, Grant-Howard would support the conclusion that Cap-Chur is liable or obligated for the payment of royalties and nothing more.
Putting aside for the moment the second exception to the rule of successor nonliability, the “de facto merger” (see Matter of AT&S Transp., LLC v Odyssey Logistics & Tech. Corp., 22 AD3d 750, 752 [2d Dept 2005]), the third exception is where “the purchasing corporation [is] a mere continuation of the selling corporation” (Schumacher v Richards Shear Co., 59 NY2d at 245). This exception applies “where only one corporation survives the transaction; the predecessor corporation must be extinguished,” and does not apply where the predecessor *690 survives “as a distinct, albeit meager, entity.” (Id.; see also Wensing v Paris Indus.-N.Y., 158 AD2d at 167 [predecessor “survived the asset transfer as a distinct corporation, albeit in bankruptcy”]; Goldman v Packaging Indus., 144 AD2d at 535.)
Cap-Chur contends that “the documentary evidence is clear” that Palmer Chemical survived the 1997 transaction. The documentary evidence consists of a printout from “the Georgia Secretary of State’s website,” which “indicates that Chemical remained in existence until July 9, 2005.” (Mem of law in support of Palmer Cap-Chur Equipment, Inc.’s motion for summary judgment at 16.) Cap-Chur makes no showing, however, that information on another state’s Web site is admissible evidence, and this court is not aware that any New York appellate court has passed definitively upon the admissibility as evidence of public records printed from even a New York government Web site. (See Secretary of Dept. of Hous. & Urban Dev. v Torres, 2 Misc 3d 53, 54-55 [App Term, 2d Dept 2003].) The court notes that neither plaintiff nor Nasco has challenged the admissibility of the Web site printout. (See id. at 55.)
In any event, Cap-Chur also points to a provision in the asset purchase agreement requiring that Palmer Chemical “retain its corporate existence and remain in good standing under the laws of the State of Georgia at least until December 31, 2002” (§ 8.2), as well as evidence that Cap-Chur continued to make payments to Palmer Chemical for the purchased assets into August 2002.
The court concludes that Cap-Chur has made a sufficient prima facie showing that the “mere continuation” exception does not apply. In opposition, neither plaintiff nor Nasco has raised a triable issue as to the applicability of the exception.
As will appear, however, the dissolution of the predecessor/ seller corporation is not necessary for there to be a “de facto merger.”
“The hallmarks of a de facto merger are the ‘continuity of ownership; cessation of ordinary business and dissolution of the [predecessor] as soon as possible; assumption by the successor of the liabilities ordinarily necessary for the uninterrupted continuation of the business of the acquired corporation; and, continuity of management, personnel, physical location, assets and general business operation.’ ” (Matter of AT&S Transp., LLC v Odyssey Logistics & Tech. Corp., 22 AD3d at 752, quoting Fitzgerald v Fah *691 nestock & Co., 286 AD2d 573, 574 [1st Dept 2001].)
“These factors are analyzed in a flexible manner that disregards mere questions of form and asks whether, in substance, it was the intent of the successor to absorb and continue the operation of the predecessor.” (Id.) “Public policy considerations dictate that, at least in the context of tort liability, courts have flexibility in determining whether a transaction constitutes a de facto merger.” (Sweatland v Park Corp., 181 AD2d 243, 246 [4th Dept 1992]; see also Washington Mut. Bank, F.A. v SIB Mtge. Corp., 21 AD3d 953, 954 [2d Dept 2005].)
Despite this emphasis on “flexibility,” the Second Circuit reads New York law as requiring continuity of ownership before a transaction will be declared a de facto merger. (See New York v National Serv. Indus., Inc., 460 F3d 201, 209-215 [2d Cir 2006].) The Second Circuit view finds support in the First Department’s decision in Matter of New York City Asbestos Litig. (15 AD3d 254 [1st Dept 2005]). There, the court held that there could be no “triable de facto merger issue” where there was insufficient evidence of both continuity of ownership and cessation of ordinary business operations and dissolution of the selling corporation as soon as possible after the transaction. (See id. at 256-259.)
The Second Circuit, moreover, suggests that, in tort cases, “other indicia of control over or continuing benefit from the sold assets might ... be sufficient to satisfy the continuity of ownership factor.” (See New York v National Serv. Indus., Inc., 460 F3d at 215 n 5.) In the case before it, the Second Circuit found “no evidence that the previous owners of [the seller corporation] continued to profit from the company in any way.” (See id. at 210.)
Here, there is incomplete evidence of continuity of ownership in this broader sense. As to Palmer Chemical, the asset purchase agreement contains a representation that “[t]he sole shareholder of Class A capital voting stock is Harold C. ‘Red’ Palmer . . . and the only other stock of Seller that is outstanding is Class B Non-Voting Common Stock” (§ 4.3 [c]). Neither in the agreement nor elsewhere in Cap-Chur’s papers is there disclosure of the name(s) of the holder(s) of the class B stock. Mr. Taylor does state in his affidavit that “[a]t all times that [he could] recall, the President and majority owner of Chemical was Harold C. ‘Red’ Palmer.” (Affidavit of Thomas B. Taylor II 11 3.) He does not state, however, the basis for his knowledge.
*692 The asset purchase agreement also identifies four persons, “all of who were co-inventors as to certain components of Palmer Cap-Chur Equipment,” and who had agreements with Palmer Chemical “for the payment of royalties . . . based upon sales of Palmer Cap-Chur Equipment.” (Asset purchase agreement § 11.1.) Indeed, the payment of these royalties is the one “liabilitty] and obligation[ ]” of Palmer Chemical that Cap-Chur assumes in the agreement. (Id. § 2.) Cap-Chur makes no showing as to the nature of the rights that support the royalty payments (presumably, patent or trade secret), the duration of the rights, the duration of the royalty obligations, or the amount of the royalties.
As to the ownership structure of Cap-Chur, in 1997 Mr. Taylor and his wife Lisa were the owners of the corporation; in 1998, Lisa Taylor’s brother purchased 10% of the stock. Mr. Taylor asserts that “[a]t no time has any current or former equity holder in Chemical owned or controlled shares in Cap-Chur.” (Affidavit of Thomas B. Taylor I111 3.) But he does not identify any of the equity holders in Chemical, other than Mr. Palmer, and does not reveal the source of his knowledge of their status. Mr. Taylor also asserts that he “was not, at any time, an equity holder in Chemical” {id. 1Í14), and makes the same statement for his wife and brother-in-law.
Looking at the second factor in identifying a de facto merger, cessation of ordinary business and dissolution of the predecessor as soon as possible, “[s]o long as the acquired corporation is shorn of its assets and has become, in essence, a shell, legal dissolution is not necessary before a finding of a de facto merger will be made.” (See Matter of AT&S Transp., LLC v Odyssey Logistics & Tech. Corp., 22 AD3d at 753; see also Fitzgerald v Fahnestock & Co., 286 AD2d at 575.) Cap-Chur’s only showing with respect to this factor is that Palmer Chemical survived the 1997 transaction until 2005, but that in itself is clearly insufficient in the absence of some evidence that Palmer Chemical was conducting “ordinary business” during that period. The only evidence of any activity is the receipt and collection of the payments made by Cap-Chur.
The effect of the 1997 transaction on Palmer Chemical’s business is apparent from Mr. Taylor’s own description of the transaction:
“Cap-Chur purchased certain assets from Chemical relating to the production, manufacture, assemblage, sale and distribution of tranquilizer projectors and *693 associated products . . . Specifically . . . fixtures and equipment associated with the production and manufacture of tranquilizer projectors . . . ; all tranquilizer projector inventory, including manuals, advertising materials, finished goods and supplies . . . ; certain claims and rights against suppliers under warranties . . . ; all intellectual property rights; assignment of the trade name ‘Palmer CapChur Equipment’ and all goodwill related thereto . . . ; customer records with respect to the sale of tranquilizer equipment . . . ; books, records and computer software and hardware relating to the manufacture and sale of tranquilizer projectors . . . ; certain accounts receivable . . . ; and certain leasehold interests.” (Affidavit of Thomas B. Taylor II1Í 8.)
Cap-Chur has made no showing that Palmer Chemical “remained in existence in a meaningful way [after] the subject transaction closed,” and was not “a mere ‘shell’ whose legal existence may be disregarded for purposes of the de facto merger analysis.” (Matter of New York City Asbestos Litig., 15 AD3d at 258.)
The third factor in “de facto merger analysis,” assumption by the successor of the liabilities ordinarily necessary for the uninterrupted continuation of the business, has to some extent already been addressed. Cap-Chur expressly assumed Palmer Chemical’s royalty obligations to the “co-inventors as to certain components of Palmer Cap-Chur Equipment.” (Asset purchase agreement § 11.1.) For all that appears in Cap-Chur’s showing on this motion, making the royalty payments was essential to the uninterrupted continuation of the tranquilizer projector business that Palmer Chemical sold to Cap-Chur.
The fourth factor, continuity of management, personnel, physical location, assets, and general business operation, has apparently been misunderstood by Cap-Chur as requiring that it “assume Chemical’s regular business obligations.” (See mem of law in support of defendant Palmer Cap-Chur’s Equipment, Inc.’s motion for summary judgment at 16-18.) But this factor relates, not to legal obligations and liabilities, but to the actual operations of the business. There is little, if anything, in Cap-Chur’s showing to dispel the inference that “[a]t a minimum, there was a cessation of [Palmer Chemical’s] ordinary business coupled with a continuation by [Cap-Chur] of the purchased business at the same physical location, and with the same as *694 sets, general business operation, and many of the same personnel.” (See City of New York v AAER Sprayed Insulations, 281 AD2d 228, 229 [1st Dept 2001].) Mr. Taylor does assert that Harold C. “Red” Palmer, Palmer Chemical’s principal, was not employed by Cap-Chur, nor compensated by Cap-Chur as a consultant.
“Courts will look to whether the acquiring corporation was seeking to obtain for itself intangible assets such as good will, trademarks, patents, customer lists and the right to use the acquired corporation’s name.” (Fitzgerald v Fahnestock & Co., 286 AD2d at 575.) Cap-Chur “acquired more than just [Palmer Chemical’s] fixed assets but also acquired all intangible assets, such as good will, and such other assets as trademarks, patents, customer lists and phone numbers”; Cap-Chur “also acquired the right to use the name” Palmer, and incorporated under it. (See Wensing v Paris Indus.-N.Y., 158 AD2d at 167; see also Winch v Yates Am. Mach. Co., 205 AD2d 1001, 1002 [3d Dept 1994].)
Particularly where, as here, the acquisition of essential intangible assets is accomplished in part by an assumption of royalty payments based upon sales, and those payments will be made to persons who may have had an equity interest in the selling corporation, which apparently ceased all ordinary business operations, the court must conclude that the purchasing corporation has not made a prima facie showing that there was no de facto merger.
Although it is unnecessary to address the opposition on this issue, the court notes evidence presented by plaintiff and Nasco that Cap-Chur led the public to connect its business with that of Palmer Chemical. A printout from Cap-Chur’s Web site states: “Founded more than 50 years ago by ‘Red’ Palmer, we are the world’s leading supplier of animal capture devices.” (See affirmation, exhibit C.) And in its first catalog after the acquisition: “For years we have manufactured our equipment with the thought that it can be rebuilt, repaired and parts could be replaced at a minimum cost to our customers.” (Id. exhibit D.) A photograph of “Red” Palmer, and a statement by him, are also included in the catalog. (Id.) Courts have noted similar advertising and marketing in finding triable issues as to de facto merger. (See Winch v Yates Am. Mach. Co., 205 AD2d at 1003; Sweatland v Park Corp., 181 AD2d at 245.)
Having determined that Cap-Chur has not made a sufficient showing that there was no de facto merger of Palmer Chemical *695 and Cap-Chur, it is unnecessary for the court to address the fourth exception to successor nonliability, that “the transaction [was] entered into fraudulently to escape” tort liability. (See Schumacher v Richards Shear Co., 59 NY2d at 245.) The court must note, however, that the question is not, as Cap-Chur would have it, whether “the contracting parties contemplated . . . tort claims might be brought based upon the sale of a chemical product two decades earlier” (see mem of law in support of defendant Palmer Cap-Chur Equipment, Inc.’s motion for summary judgment at 20). And Cap-Chur’s argument that “Cap-Chur paid fair, cash consideration” for Palmer Chemical’s assets (id.; see also Kretzmer v Firesafe Prods. Corp., 24 AD3d 158, 159 [1st Dept 2005]; Matter of New York City Asbestos Litig., 15 AD3d at 259) is not supported by any evidence, not even a conclusory statement to that effect by Mr. Taylor.
This court has not ignored the latest ruling of the Court of Appeals on successor tort liability, Semenetz v Sherling & Walden, Inc. (7 NY3d 194 [2006]), rejecting a “product line” exception to the rule of nonliability (see id. at 201). In particular, this court acknowledges the concern expressed in Semenetz that the law of successor liability be applied with a recognition of the likely effects on small businesses (see id. at 200-201), like Palmer Chemical and Cap-Chur. But small businesses are not exempt from tort liability for the harm caused by their products, and they are able to allocate or share the risk among themselves (see Grant-Howard Assoc. v General Housewares Corp., 63 NY2d at 297), and presumably insure against it. Here, the asset purchase agreement and related documents appear to be the product of experienced counsel, and yet no mention is made of tort liability.
Cap-Chur’s motion for summary judgment is, therefore, denied. Although successive motions for summary judgment are discouraged, here a renewed motion, after disclosure directed to the open questions identified above, may well be shown to be in the interest of justice. (See Rose v Horton Med. Ctr., 29 AD3d 977, 978 [2d Dept 2006].)