# State of New York Court of Appeals

OPINION

This opinion is uncorrected and subject to revision before publication in the New York Reports.

No. 29
Ester Lelchook, &c., et al.,
          Appellants,
     v.
Société Générale de Banque au
Liban SAL,
          Respondent.

Michael Radine, for appellants.
Brian J. Leske, for respondent.

HALLIGAN, J.:

The United States Court of Appeals for the Second Circuit has certified two questions concerning whether an entity inherits the contacts of a predecessor for purposes of specific personal jurisdiction. The first question asks, "Under New York law, does an

entity that acquires all of another entity's liabilities and assets, but does not merge with that entity, inherit the acquired entity's status for purposes of specific personal jurisdiction?" (67 F4th 69, 71-72 [2d Cir 2023]).  The second question asks, "In what circumstances will the acquiring entity be subject to specific personal jurisdiction in New York?" (*id.* at 72). We answer the first question affirmatively and decline to reach the second as unnecessary.

I.

Plaintiffs are 21 United States citizens who were harmed, and the estate and family members of a U.S. citizen who was killed, in rocket attacks perpetrated in 2006 by the Hizbollah terrorist organization in Israel (*id.*).  Plaintiffs allege that in the years leading up to the attacks, the Lebanese Canadian Bank (LCB) provided extensive financial services to Hizbollah, including millions of dollars in wire transfers that LCB facilitated through a New York-based correspondent bank.

In separate litigation commenced in 2008, many of the plaintiffs here sued LCB for its alleged assistance to Hizbollah (*see Licci v Lebanese Canadian Bank, SAL*, 673 F3d 50, 55 [2d Cir 2012]).  In response to two certified questions, we held that the pleadings established the transaction of business in New York with a sufficient "nexus" or "relationship" to give rise to personal jurisdiction over LCB under our long-arm statute, CPLR 302 (*see Licci v Lebanese Canadian Bank*, 20 NY3d 327 [2012]), and the Second Circuit subsequently held that exercising jurisdiction over LCB comported with due process (*see Licci v Lebanese Canadian Bank, SAL*, 732 F3d 161, 165 [2d Cir 2013]). Years later, the Second Circuit also held that the plaintiffs' complaint in that case adequately stated an aiding-and-abetting claim against LCB under the Anti-Terrorism Act

of 1990 (ATA) (18 USC § 2331 *et seq.*), as amended in 2016 by the Justice Against Sponsors of Terrorism Act (JASTA) (18 USC § 2333 [d] [2]) (*see Kaplan v Lebanese Canadian Bank, SAL*, 999 F3d 842, 847-848, 864 [2d Cir 2021]).

While the above litigation was ongoing, the United States Department of Treasury in February 2011 designated LCB a "primary money laundering concern" based on this conduct (67 F4th at 72). In June 2011, LCB and respondent Société Générale de Banque au Liban SAL (SGBL), a private company incorporated in Lebanon with headquarters in Beirut, executed a purchase agreement that, according to plaintiffs, expressly provided that, in exchange for a $580 million payment to LCB, "the Seller [LCB] shall transfer, convey, and assign . . . to the Purchaser [SGBL], and the Purchaser shall receive and assume from the Seller, all of the Seller's Assets and Liabilities" (*id.*).

In 2019, plaintiffs brought similar claims against SGBL, as LCB's successor, in the Eastern District of New York for damages stemming from the 2006 attacks (*see id.* at 74). Plaintiffs alleged that SGBL inherited LCB's jurisdictional status and is subject to personal jurisdiction in New York because it "assumed and bears successor liability for LCB's liability to the plaintiffs" by virtue of the June 2011 deal between LCB and SGBL, and that although LCB continues to exist at least for the purpose of defending litigation, it is insolvent (*id.* at 72, 74). SGBL contended that under New York law, a theory of successor jurisdiction may not be invoked to permit imputation of LCB's jurisdictional contacts to SGBL (*see* 2021 WL 4931845, *2 [ED NY 2021]).

The federal district court dismissed the action for lack of personal jurisdiction over SGBL (*id.* at *2-3). The court explained that it read several Appellate Division and federal

decisions to allow imputation of jurisdictional status only in the event of a merger, not an acquisition of all assets and liabilities (*id.* at *2).

On appeal, the Second Circuit determined that New York courts have not addressed whether successor jurisdiction lies when "a successor acquires all of a predecessor's assets and liabilities, but does not do so through either a statutory merger or a transaction that meets established standards for a *de facto* merger" (67 F4th at 81). The circuit court accordingly certified the two questions noted above, and reserved consideration of whether exercising personal jurisdiction over SGBL under a successor jurisdiction theory would comport with constitutional due process. This Court accepted the certified questions (39 NY3d 1146 [2023]).

## II.

We begin with the first question: whether under New York law, an entity may inherit another entity's specific personal jurisdiction status when it acquires all of that entity's liabilities and assets, but does not merge with the entity.

New York's long-arm statute, CPLR 302, sets forth the acts of a non-domiciliary that may give rise to specific personal jurisdiction.[1] As the Second Circuit noted in its certification decision, it previously held that LCB is subject to specific personal jurisdiction in New York under CPLR 302 for claims "materially identical" to those raised here (67

---

[1] Specific personal jurisdiction "permits a court to exercise jurisdiction only where the suit arises out of or relates to the defendant's contacts with the forum state" (*Aybar v Aybar*, 37 NY3d 274, 288-289 [2021], citing *Bristol-Myers Squibb Co. v Superior Ct. of California, San Francisco County*, 582 US 255, 262 [2017]).

F4th, at 74; *see also Licci*, 732 F3d at 168-174), and so we proceed on the assumption that the predecessor entity here, LCB, is subject to specific personal jurisdiction in New York.

SGBL argues that plaintiffs must establish that SGBL independently had contacts sufficient to satisfy CPLR 302, wholly apart from LCB's contacts with New York. That would be so if plaintiffs sought to exercise personal jurisdiction based on SGBL's own conduct, but plaintiffs' theory of successor jurisdiction relies instead on the imputation of a predecessor entity's contacts. If we credit that theory, LCB's jurisdictional contacts would become SGBL's jurisdictional contacts for purposes of the long-arm statute, and requiring a showing that SGBL itself had sufficient contacts would render this proposition irrelevant. For this reason, courts that have accepted successor jurisdiction have taken the view that only the contacts of the predecessor, not the successor, must satisfy the long-arm statute (*see State ex rel. Stein v E. I. du Pont de Nemours & Co.*, 382 NC 549, 556-558, 879 SE2d 537, 543-544 [2022]; *Jeffrey v Rapid Am. Corp.*, 448 Mich 178, 195-197, 205-206, 529 NW2d 644, 653-654, 657-658 [1995]; *Williams v Bowman Livestock Equip. Co.*, 927 F2d 1128, 1131-1132 [10th Cir 1991]; *City of Richmond, Va. v Madison Mgmt. Grp., Inc.*, 918 F2d 438, 454-455 [4th Cir 1990]; *Simmers v Am. Cyanamid Corp.*, 394 Pa Super 464, 488-489, 576 A2d 376, 389 [1990], *appeal denied* 527 Pa 649 [1991], *cert denied* 502 US 813 [1991]).

## III.

That brings us to the question of whether the jurisdictional status of a predecessor entity may be imputed to a successor who acquires all assets and liabilities. CPLR 302 does not resolve the question, contrary to what SGBL contends. SGBL argues that CPLR

302 expressly provides that an agent's acts may give rise to personal jurisdiction, and that successor jurisdiction is available only where the successor and predecessor are "one and the same" because they are alter egos, or via a merger or corporate reorganization. Applying the principle of *expressio unius est exclusio alterius*, SGBL contends that CPLR 302 precludes successor jurisdiction in all other circumstances. We are not persuaded. However helpful canons of statutory construction might generally be, the text of the long-arm statute cannot bear the weight SGBL places on it. Nor has SGBL shown that the legislature even contemplated theories of successor jurisdiction, let alone meant to preclude it in a sale of all assets and liabilities.

Turning to precedent, this Court has not decided when, if ever, a successor corporation may inherit a predecessor's jurisdictional status (*cf. Andrew Greenberg, Inc. v Sir-Tech Software, Inc.*, 4 NY3d 185, 191 [2005] [successor's own alleged contacts satisfied CPLR 302]). The Appellate Divisions have addressed successor jurisdiction only sparingly (*see Gronich & Co., Inc. v Simon Prop. Grp., Inc.*, 180 AD3d 541, 542 [1st Dept 2020] [determining without explanation that a merger imputes successor jurisdiction, but "merely acquir(ing) the assets of the predecessor company" does not], citing *U.S. Bank N.A. v Bank of Am. N.A.*, 916 F3d 143, 156-158 [2d Cir 2019]; *Semenetz v Sherling & Walden, Inc.*, 21 AD3d 1138, 1140-1141 [3d Dept 2005] [broadly stating that "in certain circumstances a successor corporation may inherit its predecessor's jurisdictional status," but finding no such jurisdiction on "the facts of the subject case" (internal quotation marks omitted)]; *BRG Corp. v Chevron U.S.A., Inc.*, 163 AD3d 1495, 1496 [4th Dept 2018] [confirming issue of successor jurisdiction is "novel and unsettled"]; *Applied Hydro–*

*Pneumatics v Bauer Mfg.*, 68 AD2d 42, 46 [1979] [holding that successor corporation's nunc pro tunc ratification and adoption of its predecessor's acts in New York yields personal jurisdiction over the successor without discussing imputation]).[2]

This Court, however, has considered the separate but related question of successor liability on several occasions. Although liability and jurisdiction are distinct legal concepts (*see Kreutter v McFadden Oil Corp.*, 71 NY2d 460, 470 [1988]), the principles animating one may inform the other. We have identified four exceptions to the general rule that a purchaser of assets is not liable for the seller's torts: when "(1) [a corporation] expressly or impliedly assumed the predecessor's tort liability, (2) there was a consolidation or merger of seller and purchaser, (3) the purchasing corporation was a mere continuation of the selling corporation, or (4) the transaction is entered into fraudulently to escape such obligations" (*Schumacher v Richards Shear Co.*, 59 NY2d 239, 245 [1983], citing *Hartford*

---

[2] The federal district court decisions addressing successor jurisdiction under New York law do not resolve the question. Some involve theories not presented here (*see Abbacor, Inc. v Miller*, 2001 WL 1006051, *4 [SD NY 2001] ["alter ego" theory]; *Societe Generale v Florida Health Sciences Ctr.*, 2003 WL 22852656, *4 [SD NY 2003] [de facto merger and "mere continuation" theory]). *Schenin v Micro Copper Corporation* suggests in a cursory fashion that an acquisition of all assets does not confer successor jurisdiction, but cites no supporting New York precedent on this point (272 F Supp 523, 526 [SD NY 1967]). *U.S. Bank* opined in dicta that under New York law, a merger, but not an acquisition of assets, would confer successor jurisdiction, but that case did not address the express assumption of all liabilities (*see* 916 F3d at 155-159; 67 F4th at 81-82). *Bartlett v Societe Generale de Banque Au Liban SAL* presented a question of successor jurisdiction "nearly identical" to that before us here, and although that court rejected successor jurisdiction, it did so primarily in reliance on *U.S. Bank* and without clearly deciding whether assumption of liabilities may confer jurisdiction (*see* 2020 WL 7089448, *16-17 [ED NY 2020]; 67 F4th at 81-82).

*Acc. & Indem. Co. v Canron*, 43 NY2d 823, 825 [1977]; *see also Semenetz v Sherling & Walden, Inc.*, 7 NY3d 194, 196-198 [2006]).

We have not extensively probed the rationale for these four exceptions. The earliest cases, *Hartford* and *Schumacher*, recite them with minimal analysis (*see Hartford*, 43 NY2d at 825; *Schumacher*, 59 NY2d at 245). In *Grant-Howard Assoc. v General Housewares Corp.* (63 NY2d 291 [1984]), we explained that successor liability is motivated in part by principles of product liability, and as such is intended to ensure that a "responsible source" (the manufacturer) is available to compensate an injured party and can in turn "transfer the costs to the general public as a component of the selling price" (*id.* at 296). We described the second and third exceptions (merger and "mere continuation") as "based on the concept that a successor that effectively takes over a company in its entirety should carry the predecessor's liabilities as a concomitant to the benefits it derives from the good will purchased" (*id.* at 296). But because the question in *Grant-Howard* was whether the successor had to indemnify the predecessor despite assuming no contractual liability for the specific harm alleged, these policy considerations were ultimately not dispositive (*id.*). Finally, although we noted that a sale of assets "may allow an injured plaintiff to proceed against a successor corporation" (*id.* at 297), we did so without explanation.

In *Semenetz v Sherling & Walden, Inc.* (7 NY3d 194 [2006]), we rejected the "product line" exception to successor liability adopted by several other jurisdictions, where a successor acquires most of a manufacturing business's assets and continues to produce its line of products, but does not assume broad liabilities (*see id.* at 197-199). We

considered three rationales for the proposed exception: the purported destruction of the plaintiff's remedies against the original manufacturer caused by the successor's acquisition of the business, which we concluded simply restated the problem; the successor's ability to spread the risk of injury, which we determined improperly assumed that the successor manufacturer in fact had capacity to spread (and absorb) the risk of injuries; and the fairness of imposing liability where the successor benefits from the predecessor's goodwill by continuing to operate the business, which we found ignored that the sale price already incorporated goodwill (*see id.* at 199-200).  We further noted that the proposed exception could substantially harm small businesses, explained why it would improperly shift responsibility away from the entity that created the risk to one that only remotely benefited and could not have eliminated the risk, and noted that most courts had likewise declined to adopt the exception (*see id.* at 200-201).

These considerations are helpful touchstones in considering successor jurisdiction. Relevant factors include the impact of our rule on parties to a potential acquisition, whether imputing jurisdiction fairly reflects the reasonable assumptions and expectations of the parties to such transactions, whether doing so induces responsible parties to internalize responsibility for risks they create, and the impact of imputing jurisdiction on those injured by a predecessor's acts (*see Grant-Howard*, 63 NY2d at 296-297; *Semenetz*, 7 NY3d at 200-201; *see also Kreutter*, 71 NY2d at 471-472 [declining to adopt fiduciary shield limit on personal jurisdiction where unnecessary as a matter of fairness and public policy]).

Those factors tip in favor of allowing successor jurisdiction where a successor purchases all assets and liabilities.  An express assumption of all assets and liabilities is not

akin to the limited acquisition in *Semenetz*, which involved only the purchase and continuation of a product line. Sophisticated corporate entities such as SGBL will undoubtedly engage in robust due diligence before agreeing to acquire all assets and liabilities of another entity. In doing so, they should understand where jurisdiction over such liabilities may lie and the potential cost if ultimately found liable, and will presumably negotiate a purchase price that is discounted by that prospect (*see E.I. du Pont de Nemours & Co.*, 382 NC at 559-561, 879 SE2d at 545-546, quoting *Simmers*, 576 A2d at 390).

Indeed, the history of this case indicates that SGBL, as the successor, would have been on notice when it made this acquisition of LCB's potential exposure in New York in connection with the terrorist attacks. Based on its support for Hizbollah, LCB had been designated as a primary money laundering concern by the U.S. Department of Treasury before SGBL agreed to assume LCB's liabilities. The *Licci* litigation, which involves allegations nearly identical to those in this case, was commenced against LCB in 2008, well before SGBL acquired LCB's assets and liabilities in 2011 (*see Lelchook*, 67 F4th at 73). And although the exact parameters of successor jurisdiction under New York law may not have been settled in 2011, "[t]he great weight" of authority at the time permitted imputation whenever the forum state's law would hold the successor liable (*see City of Richmond*, 918 F2d at 454 [internal quotation marks omitted], quoting *Simmers*, 394 Pa Super at 480, 576 A2d at 385; *see also* 2 Jurisdiction in Civil Actions § 7.03 [4] [d] [2022] ["The basic test seems to gear the (personal) jurisdiction question to whether, as a substantive matter, the successor corporation may be liable for the obligations of the predecessor . . . . If it is liable for the predecessor's obligations . . . , it will be subject to

personal jurisdiction in a suit to enforce the obligation if the predecessor would have been subject to such jurisdiction"]). Under these circumstances, SGBL should reasonably have anticipated being subject to jurisdiction over LCB's liabilities in New York.

A contrary rule would give rise to unfortunate incentives. Allowing a successor to acquire all assets and liabilities, but escape jurisdiction in a forum where its predecessor would have been answerable for those liabilities, would allow those assets to be shielded from direct claims for those liabilities in that forum. As the Second Circuit put it, a predecessor could "decouple . . . its assets from its enforceable liabilities, for value" (*see* 67 F4th at 87). Injured parties would be left to directly sue the successor in a forum that may well be less favorable, with respect to both the likely outcome and available mechanisms to enforce a judgment. As a consequence, the value of plaintiffs' claims would likely be reduced, perhaps by a significant amount, leaving the injured parties to absorb those costs themselves. That, in turn, would compromise the objective of having a "responsible source" available to absorb the risk of liability and compensate injured parties (*see Grant-Howard*, 63 NY2d at 296; *Semenetz*, 7 NY3d at 200).

Additionally, while a predecessor's assets should be available to satisfy a judgment against it prior to a sale of all assets and liabilities, that may no longer be true afterwards, depending on the terms of the deal. That risk appears to be borne out here: although plaintiffs allege that LCB had substantial assets in 2010, LCB stated in 2017 that it was "defunct, insolvent, and unable to pay any judgment rendered against it" (LCB's Brief in Opposition to Certiorari in *Licci v Lebanese Canadian Bank*, 2017 WL 712025, at *4 [U.S., filed Feb. 17, 2017]). SGBL's response to this concern—that plaintiffs can sue SGBL or

pursue its assets in other jurisdictions—encourages "catch me if you can" gamesmanship, to the detriment of New York plaintiffs.

We see no good reason to require plaintiffs to take an indirect and uncertain path to recompense where a predecessor entity allegedly caused harm, subjecting it to jurisdiction in New York, and then agreed to an acquisition of all of its assets and liabilities by a successor, who in turn reaps the benefits of the predecessor's business in New York while evading jurisdiction here. Thus, we clarify that where an entity acquires all of another entity's liabilities and assets, but does not merge with that entity, it inherits the acquired entity's status for purposes of specific personal jurisdiction.[3]

Accordingly, the first certified question should be answered in the affirmative and the second question not answered as unnecessary.

_____

[3] Our conclusion that jurisdictional contacts may be imputed here accords with nearly all decisions of other state appellate courts and federal circuit courts that have considered the issue of successor jurisdiction (*see E.I. du Pont de Nemours & Co.*, 382 NC at 560-564, 879 SE2d at 545-548; *Jeffrey*, 448 Mich at 206, 529 NW2d at 658; *Simmers*, 394 Pa Super at 489-490, 576 A2d at 389-390; *City of Richmond*, 918 F2d at 454-455; *Williams*, 927 F2d at 1132; *Perry Drug Stores v CSK Auto Corp.*, 93 Fed Appx 677, 681 [6th Cir 2003]; *CenterPoint Energy, Inc. v Superior Ct.*, 157 Cal App 4th 1101, 1120, 69 Cal Rptr 3d 202, 218 [2007]; *see also Anotek LLC v Venture Exchange*, 2021 WL 2577604, *2 [Del Sup Ct 2021] ["Court must deny (successor's) Motion to Dismiss (for lack of personal jurisdiction) if the Amended Complaint contains well-pleaded factual allegations as to *any* of these (four) bases of successor liability"]). The few cases reaching a contrary holding offer no persuasive counterpoints (*see e.g. Johnston v Pneumo Corp.*, 652 F Supp 1402, 1406 [SD Miss 1987]; *Sullivan v Fellows Testagar & Co.*, 518 So 2d 1111, 1113 [La Ct App 1987]).

Following certification of questions by the United States Court of Appeals for the Second Circuit and acceptance of the questions by this Court pursuant to section 500.27 of this Court's Rules of Practice, and after hearing argument by counsel for the parties and consideration of the briefs and record submitted, first certified question answered in the affirmative and second certified question not answered as unnecessary. Opinion by Judge Halligan. Chief Judge Wilson and Judges Rivera, Garcia, Singas, Cannataro and Troutman concur.

Decided April 18, 2024