

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-20-2005

# Wortham v. Karstadtquelle AG

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-2848

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Wortham v. Karstadtquelle AG" (2005). *2005 Decisions.* Paper 375.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/375

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

---

No. 04-2848

---

IN RE: NAZI ERA CASES AGAINST GERMAN
DEFENDANTS LITIGATION

MARTIN G. WORTHAM;
BARBARA PRINCIPE,

Appellants

v.

KARSTADTQUELLE AG;
WARENHAUS WERTHEIM GMBH

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
(Dist. Court No. 02-cv-03890)
District Court Judge: Honorable William G. Bassler

---

Submitted pursuant to LAR 34.1(a)
September 26, 2005

Before: ALITO, AMBRO, and LOURIE,[*] Circuit Judges.

(Filed: October 20, 2005)

---

[*] Honorable Alan D. Lourie, Circuit Judge of the United States Court of Appeals for the Federal Circuit, sitting by designation.

OPINION OF THE COURT

During the Nazi era, plaintiffs' relatives were forced to sell their shares in a family business in Germany. After the war, they sought restitution but allegedly settled their claim for a fraction of its value due to fraud perpetrated partly in New York by an agent of defendants' corporate predecessors. The District Court dismissed the complaint for lack of personal jurisdiction, concluding that New York's long-arm statute does not reach defendants based merely on the fraud, and that asserting jurisdiction violates due process. Plaintiffs appealed, raising these and other issues. We affirm.

**I.**

Plaintiffs Barbara Principe and Martin Wortham are a daughter and a grandson, respectively, of Günther Wortham, who was the son of Franz and Käthe Wertheim. Before 1935, Franz and Käthe owned 32 percent of the capital stock in Wertheim AG für Handelsbeteiligungen, subsequently known as AWAG Allgemeine Warenh andels-Gesellshaft AG ("AWAG"). AWAG was a holding company that operated department stores in Berlin and owned another real estate holding company.

Between 1934 and 1939, the German government forced the Wertheims to sell their holdings in AWAG to a consortium of non-Jewish AWAG directors led by Dr. Arthur Lindgens. Günther and his brother Fritz ("the brothers") fled Germany in 1939

2

and later settled in the United States. In 1950, the brothers filed a claim with the Restitution Authority in West Berlin, seeking return of the AWAG shares that had been forcibly sold to the Lindgens group.

In 1951, however, Lindgens orchestrated the sale of AWAG to a subsidiary of Hertie Waren-und Kaufhaus GmbH ("Hertie"), and in the process allegedly defrauded the brothers. In August of that year, Lindgens negotiated an agreement in New York under which AWAG shareholders sold 50.7% control of AWAG to Hertie. A few days later, Lindgens negotiated a settlement of the restitution claim with the brothers' attorney in New York. Lindgens did not tell the brothers about the pending sale, but instead indicated that AWAG was in financial straits. The brothers agreed to settle for only four percent of the claim's value. In October, Lindgens negotiated the formal sale on AWAG's behalf, executing a second sales agreement that incorporated the August sales agreement by reference. Neither agreement was publicly recorded at that time. In November, Lindgens filed the brothers' settlement in West Berlin and paid the settlement from an account at Hertie's bank.

In 1960 AWAG transferred all of its assets, liabilities, and operations to defendant Warenhaus Wertheim GmbH ("WW").[1] AWAG dissolved and Hertie became a WW shareholder. In 1983, WW transferred most of its assets to Hertie, and today WW

---

[1] AWAG, WW, Hertie, and Karstadt all underwent numerous name changes and mergers unrelated to the relevant events of this case. For simplicity we refer to the companies by these four names only.

has no day-to-day operations and only two real estate holdings. In 1994, the company that would later become defendant KarstadtQuelle AG ("Karstadt") acquired 100 percent of Hertie's stock, and in 1999 it acquired all of Hertie's assets and liabilities, whereupon Hertie ceased to exist. Karstadt then transferred all of Hertie's business operations and liabilities to a subsidiary. Karstadt now operates only as a holding company.

Plaintiffs filed this case in the Southern District of New York in March 2001, seeking, inter alia, damages related to Lingdens' alleged fraud. Defendants filed a motion to dismiss for lack of personal jurisdiction, and the parties conducted limited discovery. The Judicial Panel on Multidistrict Litigation transferred the case to the District of New Jersey for pretrial proceedings. (JA 4–5.)

The Federal Republic of Germany submitted a letter in support of dismissal, which plaintiffs moved to strike. Plaintiffs also asked the District Court to suggest that the MDL Panel remand the case to the Southern District of New York. The District Court denied the motion to strike and denied without prejudice the motion for suggestion of remand. (JA 6–7.)

In September 2003, the District Court informed counsel that his two incoming law clerks had former and future employment ties to defendants' two law firms. Plaintiffs soon filed a motion for the judge to recuse himself. In November 2003, after a hearing, the District Court denied the motion to recuse because both law clerks were walled-off from the case. (JA 8–33.)

The District Court subsequently dismissed the case for lack of personal jurisdiction. (JA 34–104.) The Court determined that no general jurisdiction exists over defendants because they do not do business in New York, and that no specific jurisdiction exists under New York's long-arm statute, N.Y. Civ. Prac. L. & R § 302(a)(2) (McKinney 1990), which authorizes jurisdiction over those who commit a tort in New York. Finally, the Court concluded that even if § 302(a)(2) reaches defendants, asserting jurisdiction is not reasonable under the Due Process Clause of the Fourteenth Amendment. (JA 85–103.)

## II.

Long-arm jurisdiction exists over WW but not over Karstadt.

### A.

Personal jurisdiction exists over a defendant if the state in which the court sits authorizes jurisdiction, Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 96 (3d Cir. 2004) (citing Fed. R. Civ. P. 4(e)), and if the Due Process Clause of the Fourteenth Amendment permits the exercise of jurisdiction, Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).

Regarding statutory jurisdiction, plaintiffs challenge only the District Court's decision that jurisdiction does not exist under § 302(a)(2), which extends personal jurisdiction over any non-domiciliary of New York who "commits a tortious act within

5

the state . . . ."[2]  Plaintiffs do not allege that defendants committed such a tort.  They claim that defendants are corporate successors of Hertie and AWAG, who participated in Lindgens' alleged fraud.

The method by which corporations combine can render a "successor in interest" to a prior corporation subject to personal jurisdiction under § 302 based on the predecessor's actions.  See Colson Servs. Corp. v. Bank of Baltimore, 712 F. Supp. 28, 30 (S.D.N.Y. 1989).  We refer to this concept as "successor jurisdiction."  A merger of corporations generally implicates successor jurisdiction, whereas a mere acquisition of assets does not.  Viacom Intern., Inc. v. Melvin Simon Productions, Inc., 774 F. Supp. 858, 864 (S.D.N.Y. 1991).  Similarly, a de facto merger triggers successor jurisdiction. See J.L.B. Equities, Inc. v. Ocwen Fin. Corp., 131 F. Supp. 2d 544, 551 n.2 (S.D.N.Y. 2001).  In Schenin v. Micro Copper Corp., 272 F. Supp. 523 (S.D.N.Y. 1967), the Court suggested that successor jurisdiction inheres not only by merger, but also by "a scheme to avoid jurisdiction," and by "an assumption of [the predecessor's] liabilities."  Id. at 526; see also Jeffrey v. Rapid Am. Corp., 529 N.W.2d 644, 652 (Mich. 1995) ("the acts of a predecessor may be imputed to the successor for jurisdictional purposes [when] the successor expressly assume[s] the predecessor's liabilities."); but see Viacom, 774 F. Supp. at 864 (implying that merger is the only circumstance implicating successor

_____

[2] Substantive state law is taken from the state of the transferor court.  Nationwide Mut. Ins. Co. v. Buffetta, 230 F.3d 634, 637 (3d Cir. 2000).

jurisdiction). The New York Appellate Division cited <u>Schenin</u> favorably in <u>Applied Hydro-Pneumatics, Inc. v. Bauer Manufacturing Inc.</u>, 416 N.Y.S.2d 817, 820 (App. Div. 1979). <u>See</u> <u>Nationwide</u>, 230 F.3d at 637 (in predicting state law, the Court can give due regard to lower state court decisions). <u>Applied Hydro-Pneumatics</u> also concluded that jurisdiction existed, despite an acquisition of assets, where a successor corporation had <u>nunc</u> <u>pro</u> <u>tunc</u> ratified the predecessor's New York contract activities. <u>Id.</u>

These cases teach that successor-jurisdiction in New York can be present in the following situations: (1) merger or de facto merger; (2) express or implied assumption of liabilities, including by a ratification of the predecessor's activities; or (3) acquisition of assets or reorganization undertaken to fraudulently avoid jurisdiction. Notably, successor <u>liability</u> is imputed in similar circumstances. <u>Schumacher v. Richards Shear Co.</u>, 451 N.E.2d 195, 198 (N.Y. 1983) (describing circumstances of successor liability). <u>See also City of Richmond v. Madison Mgmt. Group</u>, 918 F.2d 438, 454 (4th Cir. 1990) (successor jurisdiction exists if successor liability is present); <u>but cf.</u> <u>Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc.</u>, 15 N.Y.2d 443, 460 (1965) ("ultimate liability" is separate issue from jurisdiction).

Plaintiffs bear the burden to show a prima facie case of personal jurisdiction over defendants. <u>Miller</u>, 384 F.3d at 97. Normally, where no evidentiary hearing is held, we would accept the allegations in the complaint as true. <u>Id.</u> The District Court did not conduct an evidentiary hearing, but it did allow jurisdictional discovery. Accordingly, the

7

parties agreed "that the factual materials now before the Court allow the Court to decide whether plaintiff has made a prima facie showing of personal jurisdiction over each defendant *based upon competent evidence*," and not merely upon plaintiffs' allegations. (JA 54 (emphasis added).)  See also In re Magnetic Audiotape Antitrust Litig., 334 F.3d 204, 206 (2d Cir. 2003) (permitting review of facts outside the pleadings after jurisdictional discovery but absent an evidentiary hearing); In re Korean Air Lines Disaster, 829 F.2d 1171 (D.C. Cir. 1987) (law of transferor district merits "close consideration").

The parties do not dispute the facts regarding the defendants' corporate reorganizations, which are described in the declaration of Dr. Harold Kruez (JA 1085–92).[3]  Absent a factual dispute, this Court exercises plenary review over the District Court's grant of a 12(b)(2) motion.  IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254, 258 (3d Cir. 1998); In re Seventh Jud. Dist. Asbestos Litigation, 788 N.Y.S.2d 579, 583–84 (Sup. Ct. 2005) (noting that determining whether de facto merger occurred based on particular facts is an issue of law).  Plaintiffs must show jurisdiction with particularity to their claims.  Sunward Elecs., Inc. v. McDonald, 362 F.3d 17, 24 (2d Cir. 2004).

**B.**

The District Court correctly concluded that Karstadt is not Hertie's

---

[3] Plaintiffs allege that defendants recently claimed to be legal successors of Hertie and AWAG, but those admissions do not alter the actual processes by which the companies combined.

8

jurisdictional successor under § 302(a)(2), but incorrectly concluded the same about WW. According to defendants' evidence and general merger concepts, Karstadt merged with Hertie. (JA 1086–87); Grant-Howard Assocs. v. Gen. Housewares Corp., 454 N.Y.S.2d 521, 523 (Sup. Ct. 1982) (defining merger as "absorption of one corporation by another which retains its name and corporate identity with the added capital, franchises and powers of a merged corporation"). In addition, Karstadt expressly assumed Hertie's liabilities, but Karstadt promptly transferred Herties' operations and liabilities to a subsidiary. Plaintiffs do not allege that the transfer "was part of a scheme to avoid jurisdiction," Schenin, 272 F. Supp. at 526, nor do they challenge the District Court's conclusion that the activities of Karstadt's subsidiaries do not subject it to jurisdiction (JA 60–66). Therefore, Karstadt no longer possesses the specific predicate for being subject to § 302(a)(2) jurisdiction for the claims involving Lindgens' alleged fraud.

Unlike Karstadt, WW is AWAG's jurisdictional successor with regard to the claims involving Lindgens' alleged fraud. WW acquired AWAG's assets and liabilities in 1960. WW later transferred AWAG's department stores to Hertie, but there is no evidence that WW also disposed of AWAG's liabilities.[4] Defendants argue that

---

[4] The District Court concluded that successor jurisdiction cannot exist without consent by the corporate successor, relying on Armour Handcrafts, Inc. v. Miami Decorating and Design Center, Inc., 471 N.Y.S.2d 607 (App. Div. 1984). Armour Handcrafts held that consent is sufficient to implicate successor jurisdiction, but not that consent is necessary. The merged corporation over whom jurisdiction was initially lacking in that case may have simply failed to meet the standard of § 302(a)(4) (involving control over real property in New York).

9

WW has no operations and few remaining assets, but they do not show that WW no longer possesses AWAG's liabilities. In addition, WW apparently merged with AWAG. See Grant-Howard Assocs., 454 N.Y.S.2d at 523 (defining merger); In re New York City Asbestos Litig., 789 N.Y.S.2d 484, 486 (App. Div. 2005) (defining de facto merger by "continuity of ownership," "dissolution of the selling corporation," "assumption of the liabilities," and "continuity of general business operation"); Fitzgerald v. Fahnestock & Co., 730 N.Y.S.2d 70, 71–72 (App. Div. 2001) (stating that, in a de facto merger, "'a successor that effectively takes over a company in its entirety should carry the predecessor's liabilities as a concomitant to the benefits it derives from the good will purchased'" (quoting Grant-Howard Assocs., 63 N.Y.2d at 296)).

## C.

To obtain jurisdiction over WW, plaintiffs were also required to show that AWAG, "in person or through an agent . . . commit[ed] a tortious act within the state . . . ." § 302(a) and (a)(2). The District Court did not clearly err in finding that AWAG was Lindgens' co-conspirator in defrauding the brothers in New York. Nevertheless, as discussed below, the weak nexus connecting AWAG to New York undermines the constitutional permissibility of exercising jurisdiction over WW.

## III.

In order to assert personal jurisdiction over a defendant, the Due Process Clause of the Fourteenth Amendment requires that (1) the defendant has "minimum

10

contacts" with the forum, and (2) the exercise of jurisdiction comports with "traditional notions of fair play and substantial justice." Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446, 451 (3d Cir. 2003) (quoting Pinker v. Roche Holdings Ltd., 292 F.3d 361, 368 (3d Cir. 2002), Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985), and Int'l Shoe, 326 U.S. at 316). A defendant has "minimum contacts" if it "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Id. (quoting Asahi Metal Indus. Co. v. Superior Ct., 480 U.S. 102, 109 (1987)). Jurisdiction is "fair" if the defendant "'should reasonably anticipate being haled into court' in the forum." Id. (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)). Reasonableness involves the following factors:

> the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies.

Pennzoil Prods. Co. v. Colelli & Assocs., 149 F.3d 197, 205–06 (3d Cir. 1998) (quoting Burger King, 471 U.S. at 477). A weak minimum contacts showing requires greater emphasis on reasonableness. Metro. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 568 (2d Cir. 1996) (citing other circuits).

"[S]everal courts have recognized that the jurisdictional contacts of a predecessor corporation may be imputed to its successor corporation without offending

11

due process." Purdue Research Found. v. Sanofi-Synthelabo, S.A., 338 F.3d 773, 783 (7th Cir. 2003). Nevertheless, due process must be assessed for each defendant individually. Carteret Sav. Bank, FA v. Shushan, 954 F.2d 141, 145 n.6 (3d Cir. 1992) (citing Calder v. Jones, 465 U.S. 783, 790 (1984)). Mere tort liability, even if sufficient to establish statutory jurisdiction, might not satisfy due process. See Carty v. Beech Aircraft Corp., 679 F.2d 1051, 1061 (3d Cir. 1982) (citing Witt v. Scully, 539 F.2d 950, 951 (3d Cir. 1976)).

The District Court correctly determined that the exercise of jurisdiction over WW does not comport with due process. WW possesses contacts to New York only through AWAG, which through a power of attorney executed the October 1951 sale, which references the August 1951 sale, which through Lindgens is linked to the alleged fraud of the brothers. The power of attorney does not direct that Lindgens conduct any activities in New York, nor did the brothers live in New York. These multiple degrees of separation fail to demonstrate that AWAG and WW "purposefully avail[ed]" themselves of New York law such that they could expect to be haled into court there. Plaintiffs argue that WW recently sought to benefit from the sale, but those actions do not directly capitalize on the alleged fraud or represent a contact with New York.[5]

Nor can plaintiffs satisfy the greater emphasis that the Court places on

_____

[5] Similarly for Karstadt, paying the settlement out of Hertie's bank was not directed at New York.

12

reasonableness due to the weak minimum contacts showing. Forcing a wholly foreign company with no day-to-day operations to litigate in New York is no small burden. "The unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders." Asahi, 480 U.S. at 114. Plaintiffs point to WW's corporate sophistication, but they "fail to allege [that WW] transacts *any* business in New York." (JA 66.)

New York has minimal interest in this case because Lindgens' New York activities in furtherance of the alleged fraud are little more than an "isolated occurrence where the defendant had no connection with the forum state . . . ." Mesalic v. Fiberfloat Corp., 897 F.2d 696, 702 (3d Cir. 1990). The subject of the tort, its victims and injury, all exist outside New York. Relying on Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d 779, 791 (2d Cir. 1999), plaintiffs argue that the injury occurred in New York, but that case addresses "the original event which caused the injury" under § 302(a)(3), and not "the final economic injury and the felt consequences of the tort." Plaintiffs' interest in obtaining relief in New York relies upon choice-of-law issues that, as the District Court noted, "are not permissible considerations in the context of a jurisdictional inquiry." Metro. Life Ins., 84 F.3d at 574 (citing Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 778 (1984)).

Other considerations also counsel against asserting jurisdiction over WW.

13

Plaintiffs seek adjudication of real property interests in Germany, as well as rights at issue in former and pending proceedings in German tribunals. (JA 96–97, 101–02.) "Great care and reserve should be exercised when extending our notions of personal jurisdiction into the international field." Asahi, 480 U.S. at 115 (quoting United States v. First National City Bank, 379 U.S. 378, 404 (1965) (Harlan, J., dissenting)).

For all of these reasons, we affirm the District Court's grant of defendants' motion to dismiss for lack of personal jurisdiction.

**IV.**

Plaintiffs raise several other challenges. Plaintiffs cannot challenge the MDL Panel's transfer order in this appeal, see 28 U.S.C. § 1407(e), and their objection to the District Court's refusal to suggest transfer is moot in light of the lack of jurisdiction.

The District Court did not abuse its discretion in refusing to recuse itself based on its conflicted but walled-off law clerks. Selkridge v. United of Omaha Life Ins. Co., 360 F.3d 155, 166 (3d Cir. 2004) (denial of motion to recuse is reviewed for abuse of discretion). The isolation of both law clerks from the case, the absence of prior work on Nazi era cases by Ms. Park, and the open and cautious way in which the District Court dealt with the issue, all sufficiently support the conclusion that a reasonable person would not question its impartiality. See Hamid v. Price Waterhouse, 51 F.3d 1411, 1417 (9th Cir. 1995) (finding no abuse of discretion where one law clerk who later worked at a defendant's firm did not work on the case during the clerkship, and the other law clerk

14

who worked at a defendant's firm before the clerkship and worked on the case during the clerkship did not return to work at that firm). Isolation of law clerks usually ameliorates the appearance of impropriety. First Interstate Bank of Arizona, N.A. v. Murphy, Weir & Butler, 210 F.3d 983, 989 (9th Cir. 2000); see also Byrne v. Nezhat, 261 F.3d 1075, 1101–02 (11th Cir. 2001) (finding no abuse of discretion where the judge walled off a law clerk who had worked on the case during prior employment); Hunt v. American Bank & Trust Co., 783 F.2d 1011, 1016 (11th Cir. 1986) ("If a clerk has a possible conflict of interest, it is the clerk, not the judge, who must be disqualified.").

We review for abuse of discretion the District Court's refusal to strike a letter from Wolfgang Ischinger, the Ambassador of the Federal Republic of Germany. Lloyd v. Hovensa, LLC, 369 F.3d 263, 274 (3d Cir. 2004). Germany submitted the letter in support of defendants' motion to dismiss, arguing that litigation relating to settled restitution claims undermines negotiations between Germany and the Conference on Jewish Material Claims against Germany, Inc. (JA 761.1–61.2.) Germany did not intervene under Fed. R. Civ. P. 24, nor did it formally obtain status as an amicus curiae. Although appellate rules regulate the submission of amicus briefs on appeal, see Fed. R. App. P. 29, a district court's decision to accept or reject an amicus filing is entirely within the court's discretion. United States v. Gotti, 755 F. Supp. 1157, 1158 (E.D.N.Y. 1991); United States v. Alkaabi, 223 F. Supp. 2d 583, 592 (D.N.J. 2002). On appeal, amicus briefs are permitted when amici disclose "a sufficient 'interest' in the case and [] their

15

brief is 'desirable' and discusses matters that are 'relevant to the disposition of the case . . . .'" Neonatology Associates, P.A. v. C.I.R., 293 F.3d 128, 129 (3d Cir. 2002) (quoting Rule 29(b)).

Because the District Court could have granted Germany amicus curiae status, denying plaintiffs' motion to strike was within the Court's discretion. Plaintiffs' only objection is that the District Court did not require Germany to submit a statement of financial interest, but plaintiffs cite no authority that necessitates such a filing.

**V.**

For the reasons given above, we affirm the decisions of the District Court.