## NOT FOR PUBLICATION WITHOUT THE
## APPROVAL OF THE APPELLATE DIVISION

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3655-17T3

LINDA HUFF and JAMES HUFF,

    Plaintiffs-Respondents,

v.

CYPRUS AMAX MINERALS
COMPANY and IMERYS TALC
AMERICA, INC.,

    Defendants-Appellants,

and

BRENNTAG SPECIALTIES, INC.,
BRENNTAG NORTH AMERICA,
INC., COLGATE-PALMOLIVE,
INC., JOHNSON & JOHNSON,
WHITTAKER CLARK & DANIELS,
INC., UNILEVER UNITED STATES,
INC., and ARKEMA, INC.,

    Defendants.

_____

Argued October 17, 2018 – Decided  September 11, 2019

Before Judges Fuentes, Accurso and Vernoia.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Docket No. L-2818-17.

John C. McMeekin, II, argued the cause for appellants (Rawle & Henderson, LLP, attorneys; John C. McMeekin, II, on the briefs).

Robert E. Lytle argued the cause for respondents (Szaferman, Lakind, Blumstein & Blader, PC, and Simon Greenstone Panatier, PC, attorneys; Robert E. Lytle, of counsel and on the brief; Leah Kagan, on the brief).

PER CURIAM

The question we thought was presented on this appeal, here on leave granted, is the constitutionality of a New Jersey court's assertion of personal jurisdiction over a foreign defendant without minimum contacts to our State based on the jurisdictional contacts of its predecessors under a products line theory. Specifically, we granted leave to determine whether maintenance of this suit in New Jersey by the estate of an Ohio resident, Linda Huff, against two Delaware corporations, Imerys Talc America, Inc. and Cyprus Amax Minerals Company, both with principal places of business in other states, based on injuries the decedent allegedly suffered as a result of talc imported into New Jersey, processed in a plant in South Plainfield and sold by companies alleged to be defendants' predecessors to Colgate-Palmolive, Inc., which incorporated it into its Cashmere Bouquet body powder, offends due process.

2

After briefing and argument, however, Imerys filed for bankruptcy protection. Because the factual record as to Cyprus Amax is too poorly developed to justify our reaching this important constitutional question in this case, we vacate our interlocutory order as improvidently granted and dismiss the appeal.

Linda Huff and her husband James filed a complaint in the Law Division against Cyprus Amax, Imerys, Colgate-Palmolive and Johnson & Johnson, among others, alleging her exposure to asbestos through her use of Cashmere Bouquet talcum powder and Johnson's Baby Powder caused the pleural mesothelioma to which she succumbed after suit was filed. Specifically, plaintiffs alleged Huff was exposed to asbestos through her and her mother's regular use of Cashmere Bouquet from approximately 1956 to 1970, and her daily use of Johnson's Baby Powder from around 1970 to sometime after 2000.

Imerys and Cyprus Amax, represented by the same law firm, filed motions to dismiss the complaint alleging neither corporation is amenable to suit in New Jersey under either general or specific jurisdiction. As already noted, both are Delaware corporations with a principal place of business in California for Imerys and Arizona for Cyprus Amax. They asserted that neither corporation has offices, employees, real or personal property or bank accounts in New Jersey

A-3655-17T3

nor has ever filed a lawsuit here. Defendants argued their lack of any contacts with New Jersey precluded suit against them here.

Plaintiffs opposed the motions, arguing that Imerys and Cyprus Amax were sued as successors and the jurisdictional contacts, both general and specific, of their predecessors could be imputed to them to establish jurisdiction. Relying on depositions of designated representatives of defendants in other cases, as well as their declarations and representations on summary judgment motions in other jurisdictions, plaintiffs sought to establish Imerys' and Cyprus Amax's historic connection to the talc business in New Jersey.

Before relaying the evidence plaintiffs adduced on the motion, we note the court did not make specific findings about the corporate lineage of either Imerys or Cyprus Amax, perhaps owing to their decision to premise their motions on the constitutionality of successor jurisdiction and not on the facts. There was also no jurisdictional discovery undertaken, again based on defendants' failure to argue the facts of successorship or seek jurisdictional discovery until their joint motion for reconsideration. Thus the record on appeal leaves a great deal to be desired. While some points seem clear, there are numerous corporate entities with similar names, particularly as to Cyprus,

making it very difficult to follow or present a cogent account of corporate succession.

Having said that, plaintiffs presented evidence on the motion that Charles Mathieu, Inc., a New Jersey corporation in existence from 1933 to 1981, imported talc to the United States from Italy for use in the cosmetic pharmaceutic market. From approximately 1957 to 1979, Colgate purchased Italian talc from Mathieu, which Colgate incorporated into its product, Cashmere Bouquet, produced at its Jersey City plant. Although the record is less developed with regard to Johnson & Johnson, it also bought Italian talc from Mathieu during the same period.

In the mid-1970s, Mathieu opened a talc processing plant in South Plainfield under the name Metropolitan Talc Company, a company incorporated in New Jersey in 1964. Mathieu also had other alleged subsidiaries that mined minerals in the United States including Resource Processors, Inc. and American Resource Talc, Inc.

According to answers to interrogatories supplied by Imerys in another case and presented by plaintiffs on the motion, Cyprus Georesearch, an alleged wholly owned subsidiary of Cyprus Mines, acquired the assets of Mathieu, Metropolitan Talc, American Resource Talc and Resource Processors in 1979.

Mathieu, Metropolitan Talc, American Resource Talc and Resource Processors were thereafter wound up, with the New Jersey corporations, Mathieu and Metropolitan Talc, formally dissolving in 1981. There is some indication that another Charles Mathieu company continued in some form thereafter as Cyprus Industrial Minerals apparently continued to pay it a commission on its purchases of Italian talc. There is also some indication in the record that Cyprus Industrial Minerals was aware of a lawsuit in 1979 against Metropolitan in which the plaintiffs alleged exposure to Metropolitan talc caused one of them to develop mesothelioma, and that the Cyprus purchase was structured to avoid assumption of Mathieu's liabilities after that suit came to light.

Cyprus Mines, allegedly doing business as Cyprus Industrial Minerals, took over operations at the Metropolitan Talc plant in South Plainfield upon sale, retaining the plant's employees, including two of Mathieu's owners and officers, Donald Ferry and Peter Bixby. According to deposition transcripts plaintiffs submitted on the motion of Ferry and Henry Mulryan, Chief Executive Officer of Cyprus Industrial Minerals, that entity continued to sell Italian talc to Colgate between 1979 and 1992.

In 1992, Cyprus Mines Corporation doing business as Cyprus Industrial Minerals Company supposedly transferred its talc business to a newly created

6

entity Cyprus Talc Corporation for the purpose of selling it. On June 5, 1992, RTZ America, Inc., a predecessor of Rio Tinto America Holdings Inc., purchased all the outstanding stock of Cyprus Talc from Cyprus Mines Corporation. Following the transaction, Rio Tinto changed the name of Cyprus Talc to Luzenac America, Inc. In 2011, Imerys Minerals UK, Ltd. purchased all the outstanding stock of Luzenac America and changed its name to Imerys Talc America, Inc., defendant Imerys in this action. Plaintiffs presented the declaration of Patrick J. Downey, an authorized representative of Imerys, who averred in another case pending in California that "Imerys is the successor to the talc business of Cyprus Industrial Minerals Company, which supplied cosmetic talc to [Colgate] that was used in manufacturing Cashmere Bouquet talcum powder."

In 1993, following the transfer of Cyprus's talc business to Cyprus Talc and then to RTZ, Cyprus Mines Corporation and Cyprus Minerals Company merged with Amax, Inc. to form Cyprus Amax Minerals Company, defendant here. Among the documents plaintiffs submitted in opposition to the motion is a statement of undisputed material facts Cyprus Amax filed in support of a motion for summary judgment in a case in California, asserting it has never engaged in the processing, marketing or sale of talc.

7

In its reply papers, Imerys and Cyprus Amax attacked plaintiffs' legal basis for jurisdiction, arguing no published decision from any New Jersey court has recognized successor jurisdiction based on a product line theory. They contended that subjecting them to suit in New Jersey based not on their contacts to New Jersey but on those of their alleged product line successors violated the Due Process Clause.

The trial court judge denied the motion to dismiss. In a written opinion, the judge rejected plaintiffs' assertion that Imerys and Cyprus Amax were subject to general, all-purpose jurisdiction in New Jersey but also rejected Imerys' and Cyprus Amax's claims that their predecessors' contacts with New Jersey could not be constitutionally imputed to them, relying on the Third Circuit's discussion of successor jurisdiction in In re Nazi Era Cases Against German Defendants Litigation, 153 F. App'x 819, 822-23 (3d Cir. 2005), and dicta in the United States Supreme Court's recent opinion in Bristol-Myers Squibb Company v. Superior Court of California, 582 U.S. __, 137 S. Ct. 1773, 1783 (2017). Referring to Bristol-Myers, the judge found "the Supreme Court has implicitly recognized that derivative liability may be the basis for [a] finding

of state court personal jurisdiction over a defendant."[1] Finding that "defendants, through their respective corporate designees, admit to the successor corporation relationship" with Charles Mathieu, Inc. and Metropolitan Talc, both New Jersey corporations, the court found "no burden" on Imerys and Cyprus Amax "to litigate these claims, where the conduct alleged — the sale and processing of talc manufactured by New Jersey companies — occurred, in New Jersey."

Imerys and Cyprus Amax moved for reconsideration, arguing, first, that the successor jurisdiction theory applied by the court has never been recognized by this court or our Supreme Court and is in "direct conflict with the due process

---

[1]  In Bristol-Myers, the Court found California state courts lacked specific jurisdiction over claims by non-California residents for injuries allegedly suffered as a result of Plavix, a prescription blood-thinner, developed and manufactured by Bristol-Myers, a Delaware corporation headquartered in New York, in New York and New Jersey and sold nationally through a California distributor, McKesson.  137 S. Ct. at 1777-78.  In rejecting plaintiffs' "last ditch contention" that Bristol-Myers' decision to contract with McKesson to distribute Plavix could support California's exercise of specific jurisdiction over Bristol-Myers, Justice Alito noted there was no allegation the pharmaceutical company engaged in any relevant acts with McKesson, or that Bristol-Myers was "derivatively liable for McKesson's conduct in California."  Id. at 1783.  The Court concluded "[t]he bare fact that [Bristol-Myers] contracted with a California distributor is not enough to establish personal jurisdiction in the State."  Ibid.  That a corporation could establish the minimum contacts necessary to support personal jurisdiction through an agent's contacts with the forum is, we think, an unremarkable proposition.  See Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 101 n.7 (3d Cir. 2004).  We thus do not read the dicta in Bristol-Myers as supporting successor jurisdiction based on the product line exception.

analysis [of] the U.S. Supreme Court . . . beginning with . . . Daimler [AG v. Bauman, 571 U.S. 117 (2014)]". Second, defendants argued there were significant disputes of fact "regarding successor liability . . . that by extension" apply to personal jurisdiction on that basis. Defendants also emphasized the "fundamental differences" between Cyprus Amax and Imerys "such that the determination of personal jurisdiction on the successor liability has two different sets of facts that would have to be considered."

Specifically, defendants argued Cyprus Amax "has never been involved in the mining, milling, manufacture, sale or distribution of talc at any time, a point which has never been disputed by Plaintiffs." Further, defendants noted Cyprus Amax "did not come into existence until 1993," after RTZ America had already purchased Cyprus Mines' and Cyprus Minerals' talc business by buying Cyprus Talc in a stock sale. Defendants argued Cyprus Amax was formed after plaintiff's exposure to Cashmere Bouquet ended, and it is "not the legal successor to the talc business of Charles Mathieu, Inc., Cyprus Mines Corporation, or any of their subsidiaries."

In a third point, Imerys, although conceding it is the legal successor of Cyprus Mines, contended it was not the legal successor to Mathieu or Metropolitan. Like Cyprus Amax, Imerys argued the court erred in failing to

A-3655-17T3

undertake a separate analysis as to whether it "is, in fact, a legal successor-in-interest to the talc business" of Mathieu or Metropolitan.

The trial court denied the motion for reconsideration. The court reiterated its view that the jurisdictional contacts of a successor corporation can be imputed to a successor without offending due process "post Daimler" as "emphasized by Justice Alito in . . . Bristol-Myers." It further noted defendants had not defended the motion on the facts of successorship and could not do so on reconsideration by raising new arguments. The judge found plaintiffs had established a prima facie showing of jurisdiction, and noted specifically a filing by Cyprus Amax in other litigation affirmatively representing that "RTZ America, Inc., a predecessor of Rio Tinto . . . acquired the existing talc business operated by predecessors of [Cyprus Amax]."

We granted interlocutory review of that decision to Imerys and Cyprus Amax. Imerys' bankruptcy, however, leaves Cyprus Amax the sole appellant. It argues the trial court erred in finding it an admitted successor to Mathieu, and that "the basis for the trial court's finding of jurisdiction" over it, as opposed to Imerys, "is unclear." It further argues that "the trial court's application of successor personal jurisdiction is unconstitutional." Finally, it argues the trial court has "compound[ed] its error by automatically applying [its decision in this

case] to the rest of the docket — at least twenty-eight jurisdictionally dissimilar cases."[2]

Cyprus Amax, although having taken the position in the trial court that successor jurisdiction is flatly unconstitutional, has refined its argument on appeal. It now concedes that some forms of traditional successor liability forming the basis of "successor jurisdiction may be constitutional" but "product line successor jurisdiction is not, because it does not depend on a finding of corporate sameness."

Plaintiffs argue the trial court "correctly found that . . . Cyprus [Amax] and Imerys are product line successors" to Mathieu and Metropolitan Talc, "the New Jersey-based entities who milled and distributed the talc that was contained in the finished powder products at issue (which were also manufactured in and distributed from New Jersey) that proximately caused Linda Huff's inevitably fatal mesothelioma." Plaintiffs contend "that, no matter what theory of successor liability is involved, the contacts of a corporate predecessor may be

---

[2] Even were we not dismissing the interlocutory appeal as having been improvidently granted, we would have declined to reach this argument. Defendant has not sought, nor have we granted, leave to appeal any order beyond the ones on appeal, and our review is obviously limited accordingly. See Towpath Unity Tenants Ass'n v. Barba, 182 N.J. Super. 77, 81 (App. Div. 1981). We likewise deny defendants' motion to supplement the record with orders in other cases denying motions to dismiss filed by Cyprus Amax and Imerys.

A-3655-17T3

attributed to its successor for the purposes of jurisdictional analysis without offending . . . due process."

Both parties have litigated this case with the goal of obtaining a ruling on the constitutionality of product line successor jurisdiction. We granted leave to appeal because defendants asserted the trial court had unconstitutionally exercised personal jurisdiction over them based on their status as product line successors. Although contending it is not the successor of either Mathieu or Metropolitan Talc, Imerys acknowledged it is the legal successor of Cyprus Mines, which, doing business as Cyprus Industrial Minerals, took over operations at Metropolitan Talc's South Plainfield plant in 1979 and thereafter supplied talc to Colgate until 1992.

As our Supreme Court explained in <u>Lefever v. K.P. Hovnanian Enterprises</u>, 160 N.J. 307, 310 (1999):

> The general rule of corporate-successor liability is that when a company sells its assets to another company, the acquiring company is not liable for the debts and liabilities of the selling company simply because it has succeeded to the ownership of the assets of the seller. Traditionally, there have been only four exceptions: (1) the successor expressly or impliedly assumes the predecessor's liabilities; (2) there is an actual or de facto consolidation or merger of the seller and the purchaser; (3) the purchasing company is a mere

continuation of the seller; or (4) the transaction is entered into fraudulently to escape liability.[3]

New Jersey is one of five states that recognizes an additional exception to the general rule of corporate successor non-liability. Mettinger, 153 N.J. at 396. New Jersey's product line exception adopted in Ramirez v. Amsted Industries, Inc., 86 N.J. 332 (1981), imposes liability on a corporation that acquires all or substantially all the manufacturing assets of another corporation and continues the same product line. Lefever, 160 N.J. at 310.

The question here, however, is not successor liability but successor jurisdiction. In a series of cases over the last several years, the Unites States Supreme Court has explored "the outer boundaries of a state tribunal's authority to proceed against a defendant" under the Due Process Clause of the Fourteenth Amendment.[4] Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 923 (2011). As Justice Ginsburg noted in Goodyear,

> [t]he canonical opinion in this area remains International Shoe [Company v. Washington, 326 U.S.

---

[3] "A fifth exception, sometimes incorporated in one of the [four traditional] exceptions, arises from the absence of adequate consideration for the sale or transfer." Mettinger v. Globe Slicing Mach. Co., 153 N.J. 371, 380 (1998).

[4] We note New Jersey's long-arm rule, Rule 4:4-4(b)(1), permits our courts to exercise personal jurisdiction over out-of-state defendants "to the uttermost limits permitted by the United States Constitution." Avdel Corp. v. Mecure, 58 N.J. 264, 268 (1971).

A-3655-17T3

310 (1945)], in which [the Supreme Court] held that a State may authorize its courts to exercise personal jurisdiction over an out-of-state defendant if the defendant has "certain minimum contacts with [the State] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"

[Ibid. (citation omitted).]

Although the United States Supreme Court has not addressed whether a foreign corporation could be subjected to a court's general or specific jurisdiction based on the contacts of a predecessor-in-interest, it has certainly acknowledged that one corporation's jurisdictional contacts might be imputed to another. See Daimler, 571 U.S. at 134-36 (noting the Court "has not yet addressed whether a foreign corporation may be subjected to a court's general jurisdiction based on the contacts of its in-state subsidiary," although rejecting the Ninth Circuit's agency theory, which would "subject foreign corporations to general jurisdiction whenever they have an in-state subsidiary or affiliate," as "an outcome that would sweep beyond even the 'sprawling view of general jurisdiction' we rejected in Goodyear").

Several circuit courts of appeals, including our own, have addressed whether a predecessor's jurisdictional contacts could be imputed to a successor. See, e.g., In re Nazi Era Cases, 153 F. App'x at 822-23 (finding successor

A-3655-17T3

jurisdiction consonant with successor liability under New York law); <u>Purdue Research Found. v. Sanofi-Synthelabo, S.A.</u>, 338 F.3d 773 (7th Cir. 2003) (recognizing a predecessor's jurisdictional contacts may be imputed to a successor where the successor corporation is a mere continuation of the predecessor or where the forum's successor liability laws would hold the successor liable for the predecessor's actions); <u>Patin v. Thoroughbred Power Boats Inc.</u>, 294 F.3d 640 (5th Cir. 2002) (predecessor corporation's waiver of personal jurisdiction can be imputed to successor when successor is deemed to be mere continuation of its predecessor); <u>Williams v. Bowman Livestock Equip. Co.</u>, 927 F.2d 1128, 1132 (10th Cir. 1991) (holding "[a] corporation's contacts with a forum may be imputed to its successor if forum law would hold the successor liable for the actions of its predecessor"); <u>Duris v. Erato Shipping, Inc.</u>, 684 F.2d 352, 356 (6th Cir. 1982) (permitting successor jurisdiction following merger noting "[a]ny other ruling would allow corporations to immunize themselves by formalistically changing their titles").

In <u>In re Nazi Era Cases</u>, relied on by the trial judge here, the Third Circuit, applying New York law, explained that "[t]he method by which corporations combine can render a 'successor in interest' to a prior corporation subject to personal jurisdiction under [New York's long-arm statute] based on the

16

predecessor's actions."   153 F. App'x at 822.  The In re Nazi Era Cases court concluded "that successor-jurisdiction in New York can be present in the following situations: (1) merger or de facto merger; (2) express or implied assumption of liabilities, including by a ratification of the predecessor's activities; or (3) acquisition of assets or reorganization undertaken to fraudulently avoid jurisdiction," the same circumstances in which New York imputes successor liability. Id. at 823.  New York does not recognize successor liability based on the product line exception.  See Semenetz v. Sherling & Walden, Inc., 818 N.Y.S.2d 819, 824 (N.Y. 2006) (rejecting product line exception as too radical a change from existing law implicating complex economic considerations better left to the Legislature).[5]

Notably, no court appears to have addressed, in a reported decision or otherwise, whether product line successor liability could support specific jurisdiction over a successor lacking minimum contacts to the forum after

---

[5]   In rejecting product line successor liability, New York's highest court expressly declined to "address [the] argument that personal jurisdiction may properly be imputed to a successor corporation whenever it is substantively responsible for its predecessor's allegedly tortious conduct." Id. at 822 n.2.

<u>Daimler</u>.[6] The issue is significant because product line liability, which focuses on "the successor's undertaking to manufacture essentially the same line of products as the predecessor" represents a significant break with "the traditional principles of corporate successor nonliability" and exceptions, which focus on "the continuation of the corporate entity as such." <u>Ramirez</u>, 86 N.J. at 347. The issue is whether due process permits imputation of a predecessor's jurisdictional contacts to a product line successor which cannot be said to be a mere continuation of the predecessor.

Although we were poised to address that question in this case, it is not clear to us that the question is now actually presented, notwithstanding the parties' assertions prior to Imerys' bankruptcy. The facts of Cyprus Amax's corporate history are so murky we cannot discern on this record whether it is a successor-in-interest to Mathieu or Metropolitan. And although it appears

---

[6] We are aware of two courts addressing the issue prior to <u>Daimler</u>, which came to opposite conclusions on the question. <u>See</u> <u>Sementz v. Sherling & Walden, Inc.</u>, 801 N.Y.S.2d 78 (3d Dept 2005), <u>aff'd</u>, 818 N.Y.S.2d 819 (2006) (noting the product line exception to the successor liability rule deals "with the concept of tort liability, not jurisdiction" such that the exception "do[es] not and cannot confer . . . jurisdiction over the successor in the first instance"); <u>Simmers v. Am. Cyanamid Corp.</u>, 576 A.2d 376, 390 (Pa. Super. Ct. 1990) (holding "a successor company which purchases and manufactures a predecessor's product line cannot avoid the jurisdiction of those forums wherein the product was previously manufactured and distributed").

reasonably certain to be a successor to at least some Cyprus entities, it is not clear whether its alleged liability for plaintiffs' injuries in that capacity would even implicate the product line exception on the facts as presented, or instead rest on the traditional exceptions to successor non-liability or that Cyprus Amax remains the same entity as its predecessors who supplied talc to Colgate. Compare Lefever, 160 N.J. at 326 n.4 (agreeing with our opinion in Saez v. S & S Corrugated Paper Mach. Co., 302 N.J. Super. 545, 554 (App. Div. 1997), "that it is wrong to impose successor liability on an asset purchaser that discontinues the product line"), with Arevalo v. Saginaw Mach. Systems, Inc., 344 N.J. Super. 490, 492, 498 (App. Div. 2001) (reversing summary judgment to successor company, which did not continue allegedly defective product manufactured by its predecessor, based on finding that successor was the same company, after spin-off and sale of machine tool division, that manufactured the allegedly defective product and could not "avoid liability for the product it manufactured by simply transferring all diecasting machinery manufacturing operations, assets, and accompanying obligations" to a new entity).

Because we find the factual record too incomplete to resolve the jurisdiction question allegedly presented by the order we granted Cyprus Amax leave to appeal, we dismiss the appeal and remand the matter to the trial court.

19

We specifically do not address the factual issues as to successorship Cyprus Amax failed to raise until reconsideration. See Chirino v. Proud 2 Haul, Inc., 458 N.J. Super. 308, 318 (App. Div. 2017) (noting reviewing courts generally decline to consider questions or issues not presented properly to the trial court when the opportunity was available), aff'd o.b., 237 N.J. 440 (2019). Although the matter is certainly not free from doubt, we cannot find the trial court erred in finding plaintiffs carried their burden to establish a prima facie basis for the exercise of personal jurisdiction over Cyprus Amax, see Citibank, N.A. v. Estate of Simpson, 290 N.J. Super. 519, 533 (App. Div. 1996), in the absence of any challenge to the facts presented in opposition to the motion, see Dutch Run-Mays Draft, LLC v. Wolf Block, LLP, 450 N.J. Super. 590, 598 (App. Div. 2017). Cyprus Amax, of course, remains free to challenge the State's exercise of personal jurisdiction over it on either a properly supported motion to dismiss or for summary judgment.

Appeal dismissed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3655-17T3