**Smith v Ashland, Inc**

2024 NY Slip Op 31116(U)

April 3, 2024

Supreme Court, New York County

Docket Number: Index No. 156780/2017

Judge: Lynn R. Kotler

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: PART 8

-------------------------------------------------------------------X

SANDRA SMITH, Individually and as Executrix of
The ESTATE of MARK SMITH,

                                    Plaintiff(s),

        -against-

ASHLAND, INC et al.

                              Defendant(s).

-------------------------------------------------------------------X

**DECISION/ORDER** AS TO
**MOT. SEQS. 37, 38, 40, 43 AND 44**

**INTERIM ORDER** AS TO
**MOT. SEQS. 39 AND 42**

INDEX NO.: 156780/2017

Present:
Hon. Lynn R. Kotler, J.S.C.

The following papers were read on this motion to/for  sj (sequence 37)
Notice of Motion/Petition/O.S.C. — Affidavits — Exhibits.......ECFS Doc. No(s). 752-780
Notice of Cross-Motion/Answering Affidavits — Exhibits........ECFS Doc. No(s). 796-835
12/16/22 Letter, Exhibits.................................................ECFS Doc. No(s). 836-837
Replying Affidavits.........................................................ECFS Doc. No(s). 924-925
OA Transcript...............................................................ECFS Doc. No(s). 1211
Stipulation ..................................................................ECFS Doc. No(s). 1212

The following papers were read on this motion to/for  sj (sequence 38)
Notice of Motion/Petition/O.S.C. — Affidavits — Exhibits.......ECFS Doc. No(s). 842-853
Notice of Cross-Motion/Answering Affidavits — Exhibits........ECFS Doc. No(s). 948-997
Replying Affidavits.........................................................ECFS Doc. No(s). 1175
OA Transcript...............................................................ECFS Doc. No(s). 1211

The following papers were read on this motion to/for  sj (sequence 39)
Notice of Motion/Petition/O.S.C. — Affidavits — Exhibits...ECFS Doc. No(s). 871-878
Notice of Cross-Motion/Answering Affidavits — Exhibits....ECFS Doc. No(s). 1051-1073
Replying Affidavits ........................................................ECFS Doc. No(s). 1178-1182
OA Transcript...............................................................ECFS Doc. No(s). 1211

The following papers were read on this motion to/for  sj (sequence 40)
Notice of Motion/Petition/O.S.C. — Affidavits — Exhibits...ECFS Doc. No(s). 879-887
Notice of Cross-Motion/Answering Affidavits — Exhibits...ECFS Doc. No(s). 1140-1160
Replying Affidavits ........................................................ECFS Doc. No(s). 1184-1188
OA Transcript...............................................................ECFS Doc. No(s). 1211

1

[* 1]

The following papers were read on this motion to/for  sj (sequence 42)
Notice of Motion/Petition/O.S.C. — Affidavits — Exhibits...ECFS Doc. No(s). 864-870
Notice of Cross-Motion/Answering Affidavits — Exhibits....ECFS Doc. No(s). 1034-1050
Replying Affidavits ................................................... ECFS Doc. No(s). 1173
OA Transcript............................................................ ECFS Doc. No(s). 1211

The following papers were read on this motion to/for  sj (sequence 43)
Notice of Motion/Petition/O.S.C. — Affidavits — Exhibits.... ECFS Doc. No(s).854-863
Notice of Cross-Motion/Answering Affidavits — Exhibits... . ECFS Doc. No(s).1097-1139
Replying Affidavits................................................... ECFS Doc. No(s).1183
OA Transcript............................................................ ECFS Doc. No(s).1211

The following papers were read on this motion to/for  sj (sequence 44)
Notice of Motion/Petition/O.S.C. — Affidavits — Exhibits     ECFS Doc. No(s)._____
Notice of Cross-Motion/Answering Affidavits — Exhibits     ECFS Doc. No(s)._____
Replying Affidavits     ECFS Doc. No(s)._____
OA Transcript................................................................ECFS Doc. No(s). 1211

*Kotler, J.:*

This action arises from plaintiff's decedent's exposure to products containing benzene while working as a mechanic. Specifically, plaintiff alleges that toxic exposure to benzene-containing products caused the decedent, Mark Smith, to contract Myelodysplastic Syndrome ("MDS") and subsequently pass away in 2018. Plaintiff is Sandra Smith, suing individually and as Executrix of the Estate of Mark Smith, deceased, for negligence, breach of warranty, strict products liability, fraudulent misrepresentation, loss of consortium, wrongful death and a claim under the New York Survival Act. There are seven motions for summary judgment presently pending, which are hereby consolidated for the court's consideration and disposition in this single decision/order. At the outset, motion sequence 37 has been withdrawn since it was orally argued (see NYSCEF Doc. No. 1212). The remaining motions are sequences 38-

2

40 and 42-44.

In motion sequence 38, defendant United States Steel Corporation ("US Steel") moves for partial summary judgment dismissing plaintiff's claims against it for fraudulent misrepresentation and breach of express and implied warranties. Plaintiff opposes US Steel's motion with respect to her fraud claim but does not oppose dismissal of her warranty claims against US Steel.

In motion sequence 39, defendant CA Acquisition LLC d/b/a Chicago Aerosol ("CA") moves for summary judgment dismissing plaintiff's claims for gross negligence, breach of warranty, fraudulent misrepresentation and punitive damages against it. Plaintiff opposes that motion.

In motion sequence 40, defendants Chevron U.S.A. Inc. ("Chevron") and Union Oil Company of California, d/b/a Unocal ("Unocal") move for summary judgment, arguing that plaintiff cannot demonstrate that the decedent was exposed to Chevron gasoline supplied to Gulf Oil Limited Partnership ("Gulf") or any other product manufactured by Unocal containing benzene. Plaintiff does not oppose Chevron's motion but contends that there is sufficient evidence that the decedent was exposed to benzene contained in Safety-Kleen 105 solvent ("Safety Kleen"), and that Unocal was a "main" supplier of benzene-containing mineral spirits comprising Safety Kleen.

In motion sequence 42, defendant The Berkebile Oil Company, Inc. ("Berkebile") moves for partial summary judgment dismissing Plaintiff's claims for gross negligence, breach of warranty, fraudulent misrepresentation, and punitive damages. Plaintiff opposes that motion.

In motion sequence 43, defendant Sunoco (R&M) LLC ("Sunoco") moves to

3

[* 3]

dismiss plaintiff's claims against it on the grounds that there is no evidence the decedent was exposed to a solvent manufactured, supplied or distributed by Sunoco. Plaintiff opposes the motion and contends that "[t]here is ample evidence that Mr. Smith was exposed to benzene from Sunoco's mineral spirits supplied to Safety-Kleen Systems, Inc. (hereinafter "Safety-Kleen") and to Sunoco gasoline delivered to Mr. Smith's employer, Classic Auto."

Finally, in motion sequence 44, defendant Illinois Tool Works, Inc. ("ITW") moves for partial summary judgment dismissing plaintiff's claims against it related to the use of Permetex products and dismissing all of plaintiff's claims for breach of warranty, fraudulent misrepresentation and punitive damages. Plaintiff does not oppose dismissal of her claims related to Permetex products nor her breach of warranty claims, but otherwise opposes the motion.

Facts relevant to all motions

The decedent was a mechanic on Long Island who worked at various service stations from approximately 1965 through 2016. Specifically, the decedent worked at his uncle's service station, Major Texaco, from 1978 to 1980, at Major Mobil, a service station he operated from 1980 to 2003, and at Classic Auto from 2008 to 2016. During that time, plaintiff alleges that the decedent was exposed to benzene-containing products which led to him contracting MDS, which he was diagnosed with on January 25, 2016 and which caused his death on June 7, 2018. Plaintiff contends that the defendants failed to warn the decedent about the known dangers of benzene-containing products.

4

[* 4]

Previously, plaintiff and the decedent brought an action for the same alleged injuries and tortious activity against some of the same defendants in the Philadelphia Court of Common Pleas on March 2, 2017 (the "Pennsylvania Action"). Thereafter, plaintiff and the decedent brought this action on July 27, 2017. After several defendants were dismissed in the Philadelphia Action on jurisdictional grounds, plaintiff stipulated to dismissal of the Philadelphia Action and plaintiff and her decedent filed a Second Amended Complaint in this action which added defendants dismissed from the Pennsylvania Action.

After the decedent passed away, plaintiff filed a Third Amended Complaint on September 6, 2018 which names twenty-four defendants. The Third Amended Complaint asserts seven causes of action: (1) Negligence/Gross Negligence; (2) Breach of Warranty; (3) Strict Products Liability; (4) Fraudulent Misrepresentation; (5) Loss of Consortium; (6) Wrongful Death; and (7) a claim under the New York Survival Act. Issue has been joined as to all the moving defendants, and the motions were timely brought after note of issue was filed on September 30, 2022. Therefore, summary judgment relief is available.

Applicable standard of law

On a motion for summary judgment, the proponent bears the initial burden of setting forth evidentiary facts to prove a prima facie case that would entitle it to judgment in its favor, without the need for a trial (CPLR 3212; *Winegrad v. NYU Medical Center*, 64 NY2d 851 [1985]; *Zuckerman v. City of New York*, 49 NY2d 557, 562 [1980]). If the proponent fails to make out its prima facie case for summary judgment, however,

5

then its motion must be denied, regardless of the sufficiency of the opposing papers (*Alvarez v. Prospect Hospital*, 68 NY2d 320 [1986]; *Ayotte v. Gervasio*, 81 NY2d 1062 [1993]).

Granting a motion for summary judgment is the functional equivalent of a trial, therefore it is a drastic remedy that should not be granted where there is any doubt as to the existence of a triable issue (*Rotuba Extruders v. Ceppos*, 46 NY2d 223 [1977]). The court's function on these motions is limited to "issue finding," not "issue determination" (*Sillman v. Twentieth Century Fox Film*, 3 NY2d 395 [1957]).

Motion sequence 38

Plaintiff opposes US Steel's motion with respect to her fraud claim but does not oppose dismissal of her warranty claims against US Steel. Therefore, at the outset, US Steel's motion is granted to the extent that plaintiff's warranty claims against US Steel are severed and dismissed. With respect to US Steel, Plaintiff asserts that the decedent worked with Liquid Wrench, a product manufactured by defendant Radiator Specialty Company ("RSC"), which allegedly contained raffinate supplied by US Steel as an ingredient. At his deposition, the decedent testified that he used Liquid Wrench as a penetrating oil from approximately the late 1960s through 2015.

Plaintiff claims that "defendants acted to manipulate public information and knowledge in order to give the impression that benzene and benzene-containing products were safe, or did not present the full scope of danger that they did, and to prevent the disclosure of the information available to the defendants regarding the true and full nature of the health hazards of benzene and benzene-containing products."

6

[* 6]

Meanwhile, US Steel maintains that plaintiff's fraud claim against it should be dismissed because US Steel did not owe plaintiff a duty to disclose the allegedly withheld information to RSC about the safety of raffinate.

"The essential elements of a cause of action for fraud are 'representation of a material existing fact, falsity, scienter, deception and injury'" (*New York Univ. v. Continental Ins. Co.,* 87 NY2d 308 [1995], quoting *Channel Master Corp. v. Aluminum Ltd. Sales,* 4 NY2d 403 [1958]). A cause of action for fraudulent concealment requires, in addition to the four elements of fraudulent misrepresentation, "an allegation that the defendant had a duty to disclose material information and that it failed to do so" (*Mandarin Trading Ltd. v. Wildenstein,* 16 NY3d 173 [2011] [citations omitted]).

There is interplay between the duty to warn and fraudulent concealment, where the latter may give rise to the former (*see i.e. Standish-Parkin v. Lorillard Tobacco Co.,* 12 AD3d 301 [1st Dept 2004] ["... in her first cause of action for failure to warn... [p]laintiff presented sufficient evidence to raise triable issues of fact as to the state of the public's common knowledge of the risks of cigarette smoking prior to 1969, and whether decedent had relied upon defendants' various allegedly fraudulent misrepresentations and concealments of the truth concerning the safety and health risks of cigarettes"]). "[A] manufacturer has a duty to warn against latent dangers resulting from foreseeable uses of its product of which it knew or should have known. Additionally, the manufacturer must warn of dangers arising from the product's intended use or a reasonably foreseeable unintended use. The manufacturer's duty also includes a legal obligation to issue warnings regarding hazards arising from foreseeable uses of the product about which the manufacturer learns after the sale of the product. The duty

7

[* 7]

extends to the original or ultimate purchasers of the product, to employees of those purchasers, and to third persons exposed to a foreseeable and unreasonable risk of harm by the failure to warn" (*In re New York City Asbestos Litig.*, 27 NY3d 765, 788–89 [2016] [internal citations omitted]).

It is true that in the absence of a fiduciary relationship between parties, there is no duty to warn about inherent and foreseeable risks (*Blake v. Ford Motor Co.*, 41 AD3d 150 [1st Dept 2007] citing *McGarr v. Guardian Life Ins. Co. of America*, 19 AD3d 254 [1st Dept 2005] and *Elghanian v. Harvey*, 249 AD2d 206 [1st Dept 1998]). However, plaintiff maintains that she properly asserted a fraudulent misrepresentation claim, not merely omissions claim, which the court agrees with (see third amended complaint, paragraphs 111, 143 and 146). Substantively, plaintiff points to evidence that RSC requested information regarding the health hazards of raffinate and evidence that US Steel potentially misrepresented the amount of benzene contained in raffinate. On these facts, the court finds that plaintiff has at least raised a triable issue of fact sufficient to defeat US Steel's motion to dismiss the fraud claim based upon fraudulent misrepresentation.

Plaintiff further argues that a fraud claim based on omission also lies against US Steel. US Steel disagrees and contends that such a claim is unavailing absent a fiduciary relationship between US Steel and RSC. As opposed to an affirmative misrepresentation, a fraud cause of action can also be predicated upon a duty to disclose information and an omission. A fiduciary relationship can give rise to the duty to disclose, which does not ordinarily exist between parties engaged in an arm's-length transaction (*Dembeck v. 220 Cent. Park South, LLC*, 33 AD3d 491 [1st Dept 2006]).

8

[* 8]

However, the duty to disclose may also be predicated upon the "special facts" doctrine, "where one party's superior knowledge of the essential facts renders a transaction without disclosure inherently unfair" (*Swersky v. Dreyer and Taub*, 219 AD2d 321 [1st Dept 1996]).

In *Swersky*, the First Department held that there was an issue of fact as to whether the special facts doctrine could be applied to save an omission-based fraud claim. The *Swersky* Court explained that a "disparity in the level of information available to [one party], but not to [the other], places this case within the ambit of the 'special facts' doctrine, and… whether plaintiffs could have through 'the exercise of ordinary intelligence' independently ascertained that [information]" must also be determined.

Here, US Steel has shown that it did not exclusively possess knowledge vis-à-vis RCS and further that RCS could have obtained knowledge of the dangers of Benzene-containing compounds and products based on information that was available to the general population and/or otherwise ascertainable by RCS' own employees. The court disagrees with plaintiff that she has raised a triable issue of fact sufficient to defeat US Steel's motion on this point. Accordingly, the balance of US Steel's motion for summary judgment dismissing plaintiff's fraud claim based upon omission is granted and said claim is severed and dismissed.

Motion sequences 39 and 42

Motion sequence 39 and 42 are interrelated, since the movant in motion sequence 39, CA, manufactured a product called 2 Plus 2 Gum Cutter ("Gum Cutter") for movant in motion sequence 42, Berkebile, which sold said product. Therefore, the

9

[* 9]

court will consider them together. CA maintains that certificates of analysis for component solvents used in the manufacture of Gum Cutter reveals that it contained only "miniscule" amounts of benzene which thus required no warning. In turn, plaintiff maintains that the motions are procedurally improper, since movants have raised facts and arguments on reply for the first time, depriving plaintiff an opportunity to oppose same. Further, plaintiff's counsel points to the certificates of analysis, claiming they do not support CA and Berkebile's arguments and further that CA has failed to present expert testimony establishing that the Gum Cutter was not dangerous of that the level of benzene in the product otherwise complied with OSHA requirements.

The court cannot overlook the procedural issue raised by plaintiff on these motions and will grant plaintiff an opportunity to submit a surreply. While counsel for the movants asserted that the evidence submitted on reply was merely responsive to the arguments raised by plaintiff in opposition, given the drastic effect of the relief requested, the court cannot deprive plaintiff an opportunity to develop her record as to whether the Gum Cutter or its components contained a sufficient amount of benzene thereby triggering a reporting and/or labeling obligation. Therefore, the court will grant plaintiff 30 days from notice of entry of this order to submit a surreply and will grant CA and Berkebile an opportunity to submit a surreply within 30 days thereafter. The motions will be calendared for submission of papers, only, on June 14, 2024. No appearances.

Motion sequence 40

At the outset, motion sequence 40 by Chevron and Unocal is granted to the extent that plaintiff's claims against Chevron are severed and dismissed without

10

opposition. The court turns to the balance of the motion, with respect to Unocal, which plaintiff opposes. Unocal argues that there is no evidence that plaintiff's decedent was exposed to Safety Kleen containing mineral spirits supplied by Unocal. In opposition, plaintiff argues that Unocal has inappropriately attempted to shift its burden on this motion. The court disagrees with plaintiff.

Plaintiff's decedent testified that he used Safety Kleen to clean parts as a mechanic during his career. Further, Unocal was a supplier of mineral spirits/105 solvent for use in Safety Kleen during the time plaintiff's decedent used the product. Plaintiff's counsel points to deposition testimony given by a Safety Kleen witness, James Breece, on January 28, 2014, admitting that Unocal was a supplier of mineral spirts for the subject product from 1979 until at least 1993. Plaintiff's counsel further attempts to characterize Unocal as a "main" supplier based on Breece's deposition testimony.

The facts here are more similar to those in *Schiarldi v. U.S. Min. Prods.* (194 AD2d 482 [1st Dept 1993]), than they are not. In that case, the First Department held that the plaintiff in that case had failed to set forth evidentiary facts showing the circumstances of his exposure to asbestos-containing product or its likelihood. Here, while plaintiff's decedent testified that he was exposed to Safety Kleen and some batches of Safety Kleen were comprised of Unocal's benzene-containing mineral spirits, evidence of a nexus between Unocal's product and plaintiff is absent here. Therefore, just as in *Schiarldi*, there is no evidence showing the circumstances or likelihood of plaintiff's decedent's exposure to Unocal's particular product. Plaintiff's counsel's attempt to paint Unocal as a "main" supplier is not substantiated by admissible evidence. Indeed, Breece's deposition testimony merely listed Unocal as one of several

11

[* 11]

companies which Safety Kleen purchased mineral spirits from, including Amoco, Sunoco, Exxon, Shell, Hunt Refining and "probably others..." On these facts, a jury verdict against Unocal based upon plaintiff's decedent's alleged exposure to Unocal's mineral spirits would be based upon rank speculation that plaintiff came into contact with Unocal's mineral spirits. Therefore, plaintiff's claims against Unocal must be dismissed as a matter of law.

Accordingly, the balance of motion sequence 40 for summary judgment dismissing plaintiff's claims against Unocal is granted.

Motion sequence 43

Sunoco also argues, *inter alia*, that plaintiff cannot establish that her decedent used Safety Kleen which was comprised of mineral spirits supplied by Sunoco. However, in contrast to Unocal's motion, plaintiff has pointed to evidence that Sunoco supplied mineral spirits to Safety-Kleens' Clayton, New Jersey facility, which in turn supplied Safety-Kleen's North Amityville, New York branch, which then serviced locations where plaintiff's decedent worked. Sunoco has otherwise failed to demonstrate that its mineral spirits were not contained in Safety-Kleen products used by plaintiff's decedent and therefore has not met its burden on this motion. Relatedly, the court rejects Sunoco's argument that plaintiff's decedent's testimony lacked sufficient proof that he used Safety-Kleen branded parts washers. His testimony is sufficient to at least raise a triable issue of fact on this point.

Plaintiff further contends that her decedent was also exposed to benzene contained in Sunoco's gasoline delivered to his employer, Classic Auto. The decedent

12

[* 12]

specifically testified that when he pumped gas, gasoline would get on his skin and that he breathed in gasoline vapors from the gas hoses. He further testified that he was exposed to Sunoco's gasoline on a near-daily basis when it was delivered to service stations and transferred to underground storage tanks as well as when he changed pump filters and cleaned his tools and hands. On these facts, Sunoco's liability may be reasonably inferred since plaintiff has presented sufficient evidence to establish the decedent's regular use and exposure to gasoline which Sunoco supplied to Classic Auto (*see i.e. Reid v. Georgia-Pacific, Corp.*, 212 AD2sd 462 [1st Dept 1995]).

Finally, Sunoco argues that plaintiff cannot establish "specific causation". There is no dispute on this record that exposure to a certain amount of benzene for a certain period of time can cause MDS. Thus, it is Sunoco's burden to show that its products which plaintiff claims her decedent was exposed to contained an insufficient amount of benzene to cause and/or contribute to the decedent's MDS (*see i.e. Dyer v. Amchem Prods. Inc.*, 207 AD3d 408 [1st Dept 2022]). Sunoco has wholly failed to meet this burden.

Assuming *arguendo* that Sunoco had met its burden on this point, plaintiff has at least raised a triable issue of fact through an affidavit from its own expert, Robert Laumbach, M.D., M.P.H., C.I.H., D.A.B.T., a medical doctor specializing in internal medicine and occupational/environmental medicine with over twenty-five years of experience in the analysis of adverse health effects of occupational and environmental agents. Not only does Dr. Laumbach note that benzene "is recognized as a human carcinogen (cancer-causing agent) by all major agencies and authorities that regulate or produce guidelines to prevent and control cancer from occupational and environmental

13

[* 13]

chemicals", but also that "it is well established and generally accepted that benzene causes MDS" and that "there is no threshold below which benzene does not increase the risk of leukemia and lymphoma. In general, the dose-response curve between benzene exposure and leukemia risk appears to be linear at very low ppm-yr doses." Dr. Laumbach further provides analysis of the risks associated with estimates of benzene-exposure that plaintiff's decedent testified to, thereby demonstrating specific causation (*see i.e. Cornell v. 360 West 51st Street Realty, LLC*, 22 NY3d 762, 785 [2014]). On this record, Dr. Laumbach's opinions are sufficient to at least raise a triable issue of fact on causation.

Accordingly, Sunoco's motion is denied in its entirety.

Motion sequence 44

At the outset, ITW's motion is granted without opposition to the extent that plaintiff's claims related to ITW's Permetex products as well as plaintiff's claims for breach of warranty against ITW are severed and dismissed. The balance of the motion seeking dismissal of plaintiff's fraudulent misrepresentation claim and claim for punitive damages remains.

ITW and its predecessors manufactured and/or distributed a Gumout carburetor cleaner which came in aerosol cans since at least 1980. Testimony and evidence previously elicited in this case shows that plaintiff's decedent used Gumout products, from 6-8x a month up to 2-3x a week at various times, while working at Major Texaco, Major Mobil and Classic Auto.

14

[* 14]

ITW first argues that plaintiff lacks sufficient evidence that ITW made a false representation to her decedent. Contrary to ITW's contention, plaintiff has in fact pointed to sufficient evidence to raise a triable issue of fact on this point, to wit, warning labels which did not list benzene as a component or that the benzene-containing product could cause cancer, MSDS sheets, an internal audit by Penzzoil, the manufacturer of Gumout products prior to ITW's acquisition of the brand in 2010, and a 1980 internal memorandum from the federal government noting benzene content contained in Gumout Jet Spray. While ITW argues that the evidence cited by Plaintiff, "at best, could only relate to a negligent failure to warn claim, not one for fraudulent misrepresentation", the court disagrees. On this record, there is sufficient evidence from which a reasonable fact finder could conclude that ITW's predecessor, the manufacturer of Gumout products, had a duty to warn of the risks of exposure to its benzene-containing products and the warnings that were actually provided were insufficient based upon what ITW's predecessors knew or should have known (*see i.e. In re New York City Asbestos Litig.*, 27 N.Y.3d 765, 788–89 [2016]). Further, plaintiff's decedent specifically testified that he read product labels, especially if they had warning signs, thereby demonstrating justifiable reliance.

To the extent that ITW seeks to avoid liability as a successor, the court rejects this argument. Generally, a corporation which acquires the assets of another is not liable for the predecessor corporation's torts (*Semenetz v. Sherling & Walden*, 7 NY3d 194 [2006]). There are, however, exceptions to this rule, which "arise where a successor corporation expressly or impliedly assumes its predecessor's tort liability; or there is a consolidation or merger of seller and purchaser; or the purchasing corporation is a mere

15

[* 15]

continuation of the selling corporation; or the transaction is entered into fraudulently to escape such obligations" (*id. quoting Schumacher v. Richards Shear Co., Inc.*, 59 NY2d 239, 245 [1983] [internal quotations omitted]). Here, ITW has failed to present evidence that none of the general exceptions apply and thus that ITW cannot be held liable for its predecessor's torts. Accordingly, ITW's motion for summary judgment dismissing plaintiff's fraudulent misrepresentation claim is denied.

Finally, as for the punitive damages claim, ITW's arguments are unavailing. The court agrees with plaintiff that her allegations of ITW's fraud and gross negligence (which ITW has not moved for summary judgment on) support an award of punitive damages by a jury. "Punitive damages are not to compensate the injured party but rather to punish the tortfeasor and to deter this wrongdoer and others similarly situated from indulging in the same conduct in the future" (Ross v. Louise Wise Services, Inc., 8 N.Y.3d 478, 489, 836 N.Y.S.2d 509, 868 N.E.2d 189 [2007]). Punitive damages are available upon proof of "the conscious disregard of the rights of others or for conduct so reckless as to amount to such disregard" (*Hartfor Acc. And Indem. Co. v. Village of Hempstead*, 48 NY2d 218 [1979] citing PJI 2:278). To sustain an award of punitive damages, the defendant must purposefully cause, or be grossly indifferent to causing, injury (*Marinaccio v Town of Clarence*, 20 NY3d 506, 512 [2013]). "[D]efendant's behavior cannot be said to be merely volitional; an unmotivated, unintentional or even accidental result of a legally intentional act cannot, alone, qualify." (*Id.*)

On this record, ITW's predecessor-in-interest placed benzene-containing products into the stream of commerce despite the knowledge that benzene can cause cancer and failed to warn its product users of the known risks of exposure to benzene.

16

This is precisely the type of conduct that can support a punitive damages claim. Accordingly, the balance of ITW's motion is denied.

**Conclusion**

In accordance herewith, it is hereby

**ORDERED** that motion sequence 37 is withdrawn; and it is further

**ORDERED** that motion sequence 38 is granted to the following extent: [1] plaintiff's breach of warranty claims against defendant United States Steel Corporation are severed and dismissed; and [2] plaintiff's fraud claim based upon omission is severed and dismissed; and [3] the Clerk is directed to enter judgment accordingly; and it is further

**ORDERED** that the balance of motion sequence 38 is denied; and it is further

**ORDERED** that motion sequences 39 and 42 are adjourned for submission of papers as follows:

> [1] plaintiff shall submit a surreply within 30 days from notice of entry of this decision/order;
>
> [2] CA and Berkebile shall submit a surreply within 30 days thereafter; and
>
> [3] motion sequence numbers 39 and 42 are restored to the calendar for submission of papers, only, on **June 14, 2024**. No appearances;

And it is further **ORDERED** that motion sequence 40 is granted to the extent that plaintiff's claims against defendant Chevron U.S.A. Inc. and Union Oil Company of California, d/b/a Unocal are severed and dismissed and the Clerk is directed to enter judgment accordingly; and it is further

17

[* 17]

**ORDERED** that motion sequence 43 is denied in its entirety; and it is further

**ORDERED** that motion sequence 44 is granted only to the extent that plaintiff's claims related to defendant Illinois Tool Works, Inc.'s Permetex products as well as plaintiff's claims for breach of warranty against Illinois Tool Works, Inc., are severed and dismissed without opposition and the Clerk is directed to enter judgment accordingly; and it is further

**ORDERED** that the balance of motion sequence 44 is denied.

Any requested relief not expressly addressed herein has nonetheless been considered and is hereby expressly denied and this constitutes the Decision and Order of the court.

Dated:    New York, New York

So Ordered:

**Hon. Lynn R. Kotler, J.S.C.**

18

[* 18]